371 S.E.2d 54

**STATE of West Virginia**

v.

**Roger Thomas HAUGHT.**

**No. 17941.**

Supreme Court of Appeals of West Virginia.

June 3, 1988.

Shirley J. Stanton, Fairmont, for Roger Thomas Haught.

Silas Taylor, Deputy Atty. Gen., Charleston, for State.

McHUGH, Chief Justice:

This case is before this Court upon the appeal of Roger Haught. It arises from an order of the Circuit Court of Marion County which found the appellant guilty of man- ufacturing a controlled substance, marihuana, and possession with intent to deliver the same, in violation of *W. Va. Code*, 60A–4–401(a)(ii) [1983].[1] The trial court sentenced the appellant to one to five years on each count with the sentences to run consecutively. The appellant was also fined $5000 for each count and assessed court costs and attorney's fees. This Court has before it the petition for appeal, all matters of record and the briefs of counsel.

## I

The appellant and his girlfriend, Barbara Higgins, were arrested in the early morning hours of September 4, 1985, at Higgins' home. The police had obtained a warrant to search the residence, and substantial quantities of marihuana and drug paraphernalia were discovered. Upon confrontation by the police, the appellant admitted "it's [the marihuana] all mine."

The police were made aware of the appellant's activities by his brother, Martin Haught. Martin Haught testified that he met with state troopers who installed a taping device on his person the night before the appellant's arrest. He met with the appellant later that night and was backed on this occasion by three sheriff's deputies, two members of the Mannington police department, three members of the Department of Public Safety and the prosecuting attorney. During Martin Haught's meeting with the appellant, the appellant gave him a bag of marihuana. The bag of marihuana and the taped conversation were subsequently given to the police.

Prior to trial, the appellant moved to suppress the tape recording of the conversation between his brother and him and also moved for the appointment of a special prosecutor. Both of these motions were denied by the trial court. The appellant's subsequent motions for a new trial, judg-

1. *W. Va. Code*, 60A–4–401(a)(ii) [1983] provides:
    (a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
    Any person who violates this subsection with respect to:
        . . . .
    (ii) Any other controlled substance classified in Schedule I, II or III [including marihuana], is guilty of a felony, and, upon conviction, may be imprisoned in the penitentiary for not less than one year nor more than five years, or fined not more than fifteen thousand dollars or both[.]

ment of acquittal and bail pending appeal were all denied by the trial court.

## II

The first issue before us in this case is whether the trial court, in imposing a fine of $5000 for each count of which the appellant was convicted and assessing court costs and attorney's fees against him, erred in recommending that parole not be considered for the appellant until all court costs, attorney's fees and statutory fines had been paid.[2]

The appellant, an indigent, contends that the trial court erred in conditioning its recommendation for parole on the appellant's payment of costs, attorney's fees and statutory fines because the trial court failed to consider the appellant's ability to pay such. The State, on the other hand, points out that the trial court, in its penitentiary commitment order made no such recommendation and that the sentence and fine imposed were within the statutory limits prescribed by *W.Va.Code*, 60A–4–401(a)(ii) [1983].

At the outset, it is important to note that the transcript in the case before us reveals that the trial court indicated its recommendation for the appellant's parole was conditioned upon the appellant's payment of statutory fines imposed as well as the reimbursement of costs and attorney's fees; however, the trial court did not have the authority to release the appellant on parole. *See W.Va.Code*, 62–13–2 [1978]. Pursuant to *W.Va.Code*, 62–12–17 [1953], that au-

thority is vested exclusively in the state parole board. Moreover, there is no further evidence in the record that the trial court ever made such a recommendation to the board.

Even though it is unclear in this case whether or not such a recommendation was made to the parole board, we are of the opinion that standards relating to this issue should be clarified. Although the standards regarding the payment of costs and attorney's fees as a condition of parole are also unclear, we believe that the standards regarding such in the probation context, which are well-defined through both statutory and case law, are analogous and helpful in our discussion of this case.[3]

*W.Va.Code*, 62–12–17 [1953] instructs that a convicted defendant may be released on parole provided that the following conditions are met:

(1) That the parolee shall not, during the period of his parole, violate any criminal law of this or any other state, or of the United States.

(2) That he shall not, during the period of his parole, leave the State without the consent of the board.

(3) That he shall comply with the rules and regulations prescribed by the board for his supervision by the probation and parole officer.

In addition, the [parole] board may impose, subject to modification at any time, any other conditions which the board may deem advisable.

---

**2.** The trial transcript reveals the following regarding the appellant's sentence:

It will be the sentence of this Court that you be incarcerated in the State Penitentiary for a period of not less than one nor more than five years on Count I and that you be fined five thousand dollars. For Count II that you also be incarcerated in the Marion County Jail for a period of not less than one nor more than five years and that you be fined five thousand dollars. Also, this Court will assess costs against you including attorney's fees. I will further direct and recommend to the Parole Board that they not release you on parole until the fine and costs are paid.

**3.** The cases cited *infra* in the body of this opinion discuss repayment of costs as a probation condition and such repayment is statutorily au-

thorized by *W.Va.Code*, 29–21–17(d)(5) [1983] which states: "When a person sentenced to pay costs is also placed on probation or imposition or execution of sentence is suspended, the court may make repayment of costs a condition of probation or suspension of sentence."

In the case before us the trial judge indicated that he would condition his recommendation for the appellant's parole on whether or not such repayment, as well as the payment of statutory fines, was made. Unlike the repayment of costs as a probation condition which is expressly authorized by statute, the repayment of costs as a parole condition is not specifically addressed by statute. However, *W.Va.Code*, 62–12–17 [1953] authorizes the parole board, as a condition of release on parole, to "impose ... any other conditions which the board may deem advisable."

Pursuant to *W.Va.Code,* 29–21–17(d) [1983], a trial court is authorized to order a defendant to repay the costs of representation provided the defendant under the State's public defender law.[4] *W.Va.Code,* 29–21–17(d) [1983] provides in pertinent part:

(d) In the circumstances and manner set forth below, circuit judges may order repayment to the state of the costs of representation provided under this article:

(1) In every case in which services are provided to an indigent person and an adverse judgment has been rendered against such person, the court may require that person to pay as costs the compensation of appointed counsel, the expenses of the defense and such other fees and costs as authorized by statute.

(2) *The court shall not order a person to pay costs unless the person is able to pay without undue hardship. In determining the amount and method of repayment of costs, the court shall take account of the financial resources of the person, the person's ability to pay and the nature of the burden that payment of costs will impose....*

(3) When a person is sentenced to repay costs, the court may order payment to be made forthwith or within a specified period of time or in specified installments. If a person is sentenced to a term of imprisonment, an order for repayment of costs is not enforceable during the period of imprisonment unless the court expressly finds, at the time of sentencing, that the person has sufficient assets to pay the amounts ordered to be paid or finds there is a reasonable likelihood the person will acquire the necessary assets in the foreseeable future.

(emphasis added)

In *Armstead v. Dale,* 170 W.Va. 319, 322, 294 S.E.2d 122, 125 (1982), this Court concluded that the repayment provision embodied in *W.Va.Code,* 29–21–17(d) [1981, 1983] was permissible under the constitutional principles of equal protection and the availability of legal counsel. We recognized that because the imposition of financial sanctions as a condition of probation is a matter within the discretion of the trial court, such condition must be reasonable. *Armstead, supra,* 170 W.Va. at 322, 294 S.E.2d at 125, *see* syl. pt. 6, *Louk v. Haynes,* 159 W.Va. 482, 223 S.E.2d 780 (1976). In *Armstead,* we emphasized that "[a] repayment condition is unreasonable if it is beyond probationer's ability to pay without causing undue hardship to himself or his family." *Id; Fox v. State,* 176 W.Va. 677, 680, 347 S.E.2d 197, 200 (1986). In syllabus point 1 of *Armstead, supra,* we stated: "A probation condition requiring repayment of costs and attorney fees is constitutionally acceptable *if it is tuned to the probationer's ability to pay without undue hardship* and is subject to modification if his indigency persists or reoccurs. W.Va.Code, 62–12–9." (emphasis added)

This Court considered a related issue in *Fox v. State, supra.* In syllabus point 1 of *Fox,* we concluded that a condition of probation which requires a defendant to pay restitution or court costs and attorney's fees is unreasonable if it is beyond the offender's ability to pay without undue hardship to himself or his family.

In *Fox,* as in the case now before us, there was nothing in the record to indicate that the circuit court inquired into or considered the appellant's ability to pay without undue hardship prior to the imposition of the repayment conditions. Such an inquiry is required before a court may condition probation on reimbursement of the costs of services rendered a defendant under our public defender law, *W.Va.Code,* 29–21–17(d)(2) [1983]. *See Fox, supra,* 176 W.Va. at 681, 347 S.E.2d at 201.

---

**4.** *W.Va.Code,* 62–5–5 [1931] requires a court to certify "[a]ny other expense [than the fees of the officer executing process or rendering service pursuant to *W.Va.Code,* 62–5–4 [1931]] incident to a proceeding in a criminal case, which is payable out of the [state] treasury," on vouchers sent to the state auditor for payment. Moreover, *W.Va.Code,* 62–5–7 [1931] provides that all expenses incident to a prosecution are chargeable to a convicted defendant as a civil judgment and execution may be had as for a fine.

Our holding in *Fox* that an inquiry into the defendant's ability to pay is required before conditioning probation on reimbursement of costs logically extends to the context of conditioning a defendant's parole on the same.

Our holding in *Fox* also comports with the United States Supreme Court's decision in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). In *Bearden*, the Court considered the case of a defendant who was ordered, as part of his sentence, to pay a fine and make financial restitution. The defendant, who was on probation, made a partial payment but was thereafter laid off his job and consequently became unable to complete the full payment ordered. The State moved for a revocation of the defendant's probation for failure to pay the monies ordered. The court revoked the defendant's probation on that basis and the Georgia Court of Appeals affirmed. In reversing the lower courts, the United States Supreme Court concluded that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. 461 U.S. at 672, 103 S.Ct. at 2073, 76 L.Ed.2d at 233. *Cf. Robertson v. Goldman*, 179 W.Va. 453, 369 S.E.2d 888 (W.Va.1988) (denial of equal protection to jail indigents facing charges which do not carry a potential jail term solely because they are unable to post bond); *Kolvek v. Napple*, 158 W.Va. 568, 212 S.E.2d 614 (1975) (denial of equal protection for indigent to be incarcerated because he cannot furnish cash bond or proper surety in a "peace bond" proceeding).

▮ Accordingly, in determining whether a parolee or probationer may have parole or probation revoked for failure to pay court-imposed fines, costs, and restitution, the trial court, or parole board, as the case may be, must take into consideration and make a reasonable allowance for the parolee's or probationer's individual economic situation. *Lawson v. Commonwealth Board of Probation & Parole*, 105 Pa. Cmwlth. 427, 431, 524 A.2d 1053, 1056 (1987); *Fox, supra; Armstead, supra. See Tate v. Short*, 401 U.S. 395, 91 S.Ct.

668, 28 L.Ed.2d 130 (1971); *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970).

▮ Based upon the foregoing, before a trial court conditions its recommendation for a defendant's parole upon the defendant's payment of statutory fines, costs and attorney's fees, the trial court must consider the financial resources of the defendant, the defendant's ability to pay and the nature of the burden that the payment of such costs will impose upon the defendant. We further note that pursuant to *W.Va.Code*, 29–21–17(d)(3) [1983], an order for repayment of costs is not enforceable during the period of imprisonment unless at the time of sentencing the defendant has sufficient assets to pay or there is a reasonable likelihood that the defendant will acquire such assets in the foreseeable future. Thus, conditioning release of a defendant on parole without making such an inquiry is similarly unsound.

### III

The next issue presented for our consideration in this appeal is whether the trial court erred in withholding the identity of the police informant at the appellant's preliminary hearing and allowing the admission of hearsay evidence regarding the source's confidential information. The appellant contends that because the State withheld the identity of the informant at the preliminary hearing he was denied his constitutional right of confronting witnesses against him.

▮ At the outset, we recognize that a common law privilege is accorded the State against the disclosure of the identity of an informant who has furnished information concerning violations of law to law enforcement officers provided the defendant's case is not jeopardized by such nondisclosure. *See* syl. pt. 1, *State v. Tamez*, 169 W.Va. 382, 290 S.E.2d 14 (1982); syl. pt. 2, *State v. Bennett*, 172 W.Va. 123, 304 S.E.2d 28 (1983).

We further note that the purpose of a preliminary hearing is to determine whether there is probable cause to believe that an

offense has been committed and that the defendant has committed it. *Desper v. State,* 173 W.Va. 494, 498, 318 S.E.2d 437, 441 (1984). The purpose of a preliminary hearing is not to provide the defendant with discovery of the nature of the State's case against the defendant, although such discovery may be a by-product of the hearing. *Id.,* 173 W.Va. at 498, 318 S.E.2d at 442 (collecting cases at 318 S.E.2d at 441–42).

■■■ The Supreme Court of the United States has noted that the interests at stake in a pretrial suppression hearing are of a lesser magnitude than those in the trial itself. *United States v. Raddatz,* 447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424, 435 (1980). During such a hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial. *Id.* Although the due process clause of the fifth amendment has been held to require the government to disclose the identity of an informant at trial, provided the identity is shown to be relevant and helpful to the defense, *Roviaro v. United States,* 353 U.S. 53, 60–61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, 645 (1957), neither the fifth amendment nor the sixth amendment, quoted *infra* in note 5, has been held to require the disclosure of an informant's identity at a pretrial hearing to determine probable cause. *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) (discussed *infra* in the body of this opinion). Thus, the process due at a preliminary hearing may be less demanding and exacting than the protections accorded the defendant at the trial itself. *United States v. Raddatz, supra.*

The Supreme Court of the United States discussed an issue similar to the one now facing us in *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). In *McCray,* two Chicago policemen received information from an informant that the petitioner was selling narcotics and had narcotics on his person. The policemen then made a warrantless arrest of the peti-

tioner for possessing narcotics. At a pretrial hearing on the petitioner's motion to suppress the evidence found on the petitioner, the officers testified that the informant had told them the petitioner "was selling narcotics and had narcotics on his person" and the area in which the petitioner could be found. The officers subsequently found the petitioner in that vicinity. After pointing the petitioner out, the informant departed. The officers then arrested the petitioner, searched him in their vehicle and discovered the narcotics. The officers also testified that during the one-to-two years that they had known the informant, he had frequently furnished accurate information about narcotics activities which had led to many convictions.

The petitioner requested the informant's identity and the State, relying on the testimonial privilege under Illinois law against such disclosure, objected. The court sustained the State's objections and denied the petitioner's motion to suppress. The petitioner was thereafter convicted on the basis of the evidence seized. The judgment of conviction was upheld by the Supreme Court of Illinois.

In affirming the state court's holding, the Supreme Court of the United States ruled that under Illinois law, where the issue was not guilt or innocence, but the question of probable cause for an arrest or search, police officers need not be required to disclose an informant's identity if the trial judge is convinced, by evidence submitted in court and subject to cross-examination, that the officers relied in good faith upon credible information supplied by a reliable informant. 386 U.S. at 305, 87 S.Ct. at 1059, 18 L.Ed.2d at 67. The Court thus allowed the admission of hearsay evidence regarding information provided by the confidential source. The Court further rejected the petitioner's contention that the failure to disclose the identity of his informant violated his constitutional rights of due process as well as his right of confrontation.[5] 386 U.S. at 312–14, 87 S.Ct. at

---

**5.** The due process clause is found in the fifth amendment to the *United States Constitution* and reads in pertinent part: "No person shall be

... deprived of life, liberty, or property, without due process of law[.]" Parallel language is found in *W.Va. Const.* art. III, § 10.

1063–64, 18 L.Ed.2d at 71–72. *See also United States v. Matlock*, 415 U.S. 164, 174–75, 94 S.Ct. 988, 995, 39 L.Ed.2d 242, 251–52 (1974) (no automatic rule against hearsay evidence during pretrial suppression hearing where trial court can accord such evidence the weight it deems desirable).

■ Although the Court applied Illinois law regarding testimonial privilege in deciding *McCray,* the standard set forth in *McCray* is analogous to the prerequisites necessary to allow the admission of hearsay evidence at a preliminary hearing set forth in *W.Va.Crim.P.* 5.1(a). Rule 5.1(a) of the *West Virginia Rules of Criminal Procedure* allows the presentation of hearsay evidence at a preliminary hearing provided that certain conditions are met. Rule 5.1(a) provides in relevant part:

(a) *Probable Cause of Finding.* If from the evidence it appears that there is probable cause to believe that an offense has been committed and that the defendant committed it, the magistrate shall forthwith hold him to answer in circuit court. Witnesses shall be examined and evidence introduced for the state under the rules of evidence prevailing in criminal trials generally except that hearsay evidence may be received, if there is a substantial basis for believing:

(1) That the source of the hearsay is credible;

(2) That there is a factual basis for the information furnished; and

(3) That it would impose an unreasonable burden on one of the parties or on a witness to require that the primary source of the evidence be produced at the hearing.

■ In the case before us, each of the aforementioned criteria was met. At the preliminary hearing to determine probable cause, a witness for the State, Trooper Finkenbinder, testified that the informant had established credibility because the informant, Martin Haught, had provided the authorities with information they were able to corroborate in past investigations. Second, the witness indicated that he had a factual basis for believing the information furnished because it corroborated information provided the witness one to two months earlier by another source which indicated that the appellant was growing marihuana on the property on which the marihuana was ultimately discovered. Finally, the witness acknowledged that the informant could be endangered and that future investigations may be hampered if his identity were revealed at that time, thereby imposing an unreasonable burden on the witness as well as the State to bring the informant to the hearing. *See State v. Bennett,* 172 W.Va. 123, 127–128, 304 S.E.2d 28, 32 (1983).

Recently, in *State v. Reedy,* 177 W.Va. 406, 415, 352 S.E.2d 158, 167 (1986), we reasoned that a trial court did not abuse its discretion by refusing to order disclosure of the identity of a confidential informant at trial where, *inter alia,* the defendant failed to show that his defense was jeopardized by nondisclosure.[6]

Accordingly, during a preliminary hearing held for the purpose of determining the question of probable cause for an arrest or search, a trial court is not required to disclose the identity of a confidential informant, provided that there is a substantial basis for believing the informant is credible, that there is a factual basis for the information furnished and that it would impose an unreasonable burden on one of the parties or on a witness to require that the identity of the informant be disclosed at the hearing.

Based upon the foregoing, the withholding of the informant's identity at the appellant's preliminary hearing does not consti-

---

The right of an accused to confront witnesses presented against him or her is guaranteed by the sixth amendment to the Federal *Constitution* which provides in part: "In all criminal prosecutions, the accused shall ... be confronted with the witnesses against him[.]" Similar language is embodied in *W.Va. Const.* art. III, § 14.

6. We note that the resolution of the disclosure issue at trial rests within the sound discretion of the trial court and that only an abuse of discretion will result in reversal. *See State v. Bennett, supra; State v. Tamez,* 169 W.Va. 382, 393, 290 S.E.2d 14, 21 (1982).

tute reversible error, and the admission of the hearsay evidence regarding the source's information was properly admitted pursuant to *W.Va.R.Crim.P.* 5.1(a).

## IV

The third issue before us in this case is whether the trial court erred in denying the appellant's motion for a special prosecutor because the prosecuting attorney who eventually tried the appellant's case had participated in the investigation leading to the appellant's arrest and had been present at his arrest.

The appellant asserts that the prosecuting attorney through his participation in the appellant's investigation as well as his presence during the search and arrest of the appellant abandoned his quasi-judicial role as a prosecutor and should have been disqualified from trying the case. On the other hand, the State maintains that the prosecuting attorney's actions failed to evidence a personal interest on his part to secure the appellant's conviction; thus, the trial court's denial of the appellant's motion for a special prosecutor was proper.

Recently, in *State v. Pennington,* 179 W.Va. 139, 365 S.E.2d 803 (1987), we reaffirmed some established principles regarding prosecutorial disqualification. At the outset, we emphasized that where a prosecuting attorney has a personal interest, as distinguished from a public interest, in convicting an accused, he or she may be disqualified. 179 W.Va. at 147, 365 S.E.2d at 811. We restated the standard to be applied in determining whether a prosecuting attorney should be disqualified from prosecuting a particular case: " 'Under circumstances where it can reasonably be inferred that the prosecuting attorney has an interest in the outcome of a criminal prosecution beyond ordinary dedication to his duty to see that justice is done, the prosecuting attorney should be disqualified from prosecuting the case....' " Syl. pt. 4, *State v. Pennington, supra, quoting* syl. pt. 4, in part, *State v. Knight,* 168 W.Va. 615, 285 S.E.2d 401 (1981). In determining whether the prosecutor's interest in prosecuting a particular case goes " 'beyond [an] ordinary dedication to his [or her] duty to see that justice is done[,]' " the focus becomes whether the prosecutor's interest is public or personal. 179 W.Va. at 147, 365 S.E.2d at 811.

In *State v. Jenkins,* 176 W.Va. 652, 654–655, 346 S.E.2d 802, 805 (1986), the defendant made an argument similar to the one in the case before us regarding recusal of the prosecutor who was prosecuting his case. In *Jenkins,* the defendant claimed that his counsel should have moved that the prosecutor recuse himself because he was present at the defendant's arrest and interrogation. There, we noted that a State's attorney is not disqualified from prosecuting a case simply because he has heard the defendant make incriminating statements unless circumstances are such that it will be necessary for him or her to testify to the jury about those statements.

The Louisiana Court of Appeal recently determined that the recusal of a prosecuting attorney was not required although the prosecuting attorney had observed events leading to the defendant's arrest. *State v. Green,* 476 So.2d 859, 862 (La.Ct.App.1985). The court rejected the defendant's motion to recuse the prosecutor due to the prosecutor's involvement in the investigation and arrest chiefly because the defendant failed to prove that the prosecutor's activities evidenced that he had a personal interest in the case so as to conflict with his duty to promote the "fair and impartial administration of justice." *Id. See also, People v. Lemble,* 103 Mich.App. 220, 223–24, 303 N.W.2d 191, 193 (1981) (no denial of fair trial where attorney from prosecutor's office who was present at defendant's arrest testified at his trial and where litigating prosecutor was from same office); *cf. State v. Reeves,* 216 Neb. 206, 216, 344 N.W.2d 433, 442, *cert. denied,* 469 U.S. 1028, 105 S.Ct. 447, 83 L.Ed.2d 372 (1984) (no denial of fair trial where trial court failed to disqualify prosecutor who interviewed defendant shortly after commission of crime and was called as a witness for the defense).

■ However, the action of the prosecutor in the case before us was ill advised. After reviewing the facts of this case, we

are of the opinion that the prosecutor should have exercised better judgment in this case and refrained from accompanying the plethora of law enforcement officers who participated in the search and arrest of the appellant. The record, however, as presented to us in this case fails to disclose any particulars which were indicative of the prosecutor's personal interest in prosecuting this case. It is also important to note that neither the State nor the appellant expressed any desire to call the prosecutor as a witness in this case.

Moreover, this Court has emphasized that it is only under very rare circumstances that a special prosecutor should be appointed. *Pennington, supra* 179 W.Va. at 147, 365 S.E.2d at 811; *Knight, supra,* 168 W.Va. at 623, 285 S.E.2d at 406.

■ However, based upon the foregoing, even though the prosecuting attorney participated in the investigation surrounding the defendant's arrest and was present at the defendant's arrest, where the record failed to disclose any evidence which would indicate that the prosecutor's interest in prosecuting the case went beyond his or her ordinary dedication to his or her duty to see that justice is done, the trial court did not err in denying a defendant's motion for a special prosecutor.

### V

■ The appellant next maintains that the trial court erred in not granting a mistrial when it was discovered through a witness' testimony that the appellant's legal address was Route 2, Box 92, Mannington, but that the address of the residence actually searched was Route 2, Box 81–C, Mannington, where the appellant resided much of the time. Because we believe the search

warrant described the residence searched with sufficient particularity, we affirm the trial court's denial of the appellant's motion for mistrial.[7]

The fourth amendment to the *United States Constitution* and article III, section 6 of the *West Virginia Constitution* forbid unreasonable searches and seizures and require search warrants "particularly describing the place to be searched[.]"

*W. Va. Code,* 62–1A–3 [1965] particularly prescribes the requirements for the issuance of a search warrant and the contents thereof. Once the judge or magistrate is satisfied that probable cause exists for a search warrant to be issued, the statute provides that "he [or she] shall issue a warrant identifying the property and particularly describing the place ... to be searched."

The United States Supreme Court established the standard for the particularity of a description necessary for a valid search warrant in *Steele v. United States,* 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925). The Court enunciated that the test for the particularity of the description is whether the "description is such that the officer with a search warrant can[,] with reasonable effort[,] ascertain and identify the place intended."[8] 267 U.S. at 503, 45 S.Ct. at 416, 69 L.Ed. at 760. *See also* syl. pt. 2, *State v. John,* 103 W.Va. 148, 136 S.E. 842 (1927), *overruled on other grounds,* syl. pt. 6, *State v. Bragg,* 140 W.Va. 585, 87 S.E.2d 689 (1955); *In Re Motion to Quash Grand Jury Subpoenas,* 593 F.Supp. 184, 190 (S.D.W.Va.1984). Recently, the United States Supreme Court noted that the purpose of the particularity requirement is to prevent exploratory searches made on mere suspicion rather than on judicially determined probable cause. *Maryland v.*

---

**7.** In the case before us, the search warrant complained that:

> Roger Haught did unlawfully ... possess, with intent to deliver ... and manufacture ... marihuana and that ... marihuana, and paraphernalia used to package, process, grow, and store marihuana, and proceeds from sale of marihuana is concealed in one and one-half story wood frame residence covered with weather beaten unpainted lumber and three outbuildings, and garage[?] barn and the curtilage of all thereof, owned by Mrs. Carl Ber-

dine, situate approximately 1 mile northwest of secondary route 7 on secondary route 7/3 (Laurel Run) on the east side of 7/3, being last house.

**8.** To examine recent cases in which state courts have applied this standard, see *State v. Schaffer,* 112 Idaho 1024, 1027, 739 P.2d 323, 326 (1987); *State v. Miller,* 495 So.2d 422, 425 (La.Ct.App. 1986); *State v. Horton,* 207 N.J.Super. 555, 557–58, 504 A.2d 801, 802 (Law Div.1985); *State v. DeLaurier,* 533 A.2d 1167, 1171 (R.I.1987).

*Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72, 80 (1987). Although the description of the premises to be searched need not be accurate in every detail, it must furnish "a sufficient basis for identification of the property so that it is recognizable from other adjoining and neighboring properties." *State v. Daniels,* 46 N.J. 428, 437, 217 A.2d 610, 615 (1966).

Accordingly, we hold that the description contained in a search warrant is sufficient where a law enforcement officer charged with making a search may, by the description of the premises contained in the search warrant, identify and ascertain the place intended to be searched with reasonable certainty.

The search warrant thoroughly described the precise location of the house to be searched, particularly noting the exterior features of the house so as not to confuse it with any nearby properties. Moreover, it is clear from the record that the appellant resided much of the time in the house actually searched.[9] In the case before us, it is clear that the description contained in the search warrant was sufficiently detailed so as to allow the law enforcement officers to locate the house to be searched with reasonable probability and certainty that they would not search the wrong premises. *See Walker v. State,* 184 Ga.App. 558, 559, 362 S.E.2d 135, 136 (1987) and *State v. Miller,* 495 So.2d 422, 425 (La.Ct.App.1986) (description of premises to be searched sufficient despite inaccuracies in street address).

## VI

As a final point of error, the appellant contends that the trial court abused its discretion in ruling that new evidence could be presented on redirect examination.[10]

It is fundamental that where the subject matter of a question has been introduced by a defendant on cross-examination, it may properly be covered on redirect. *See Somerville v. Dellosa,* 133 W.Va. 435, 444, 56 S.E.2d 756, 762 (1949). Moreover, questions not going to matters previously covered on cross-examination may be asked at the discretion of the trial court. F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 3.4(A), at 79 (2d ed. 1986). " 'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' " Syl. pt. 2, *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983), *quoting State v. Louk,* 171 W.Va. 639, 643, 301 S.E.2d 596, 599 (1983); *see also* syl. pt. 7, *State v. Miller,* 175 W.Va. 614, 336 S.E.2d 910 (1985). Based upon our reading of the record in the case before us, we conclude that the trial court did not abuse its discretion in allowing the admission of the evidence on redirect examination.

For the foregoing reasons, judgment of the Circuit Court of Marion County is affirmed.

Affirmed.

---

**9.** Because we have upheld the validity of the search warrant in the case before us, we need not consider the applicability of the "good faith" exception to the exclusionary rule enunciated by the Supreme Court of the United States in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

**10.** The appellant also complains that the trial court erred in allowing the admission of a picture of the dead nephew of Martin Haught, the informant, lying in a casket. However, the appellant failed to make a timely objection regarding such, which forecloses our consideration of the issue. *See State v. Beckett,* 172 W.Va. 817, 824, 310 S.E.2d 883, 890 (1983).