499 S.E.2d 870

**STATE of West Virginia, Appellee,**

v.

**Mark Randal MURRELL, Appellant.**

No. 23808.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 8, 1997.

Decided Dec. 16, 1997.

Darrell V. McGraw, Attorney General, Scott E. Johnson, Senior Assistant Attorney General, Charleston, for Appellee.

Stephen Warner, Managing Deputy Public Defender, Charleston, for Appellant.

**WORKMAN, Chief Justice:**

Mark Randal Murrell (hereinafter "Appellant") appeals the imposition of a $20,000 fine after a plea of guilty to two counts of third degree sexual assault. The Appellant contends that the fines and costs constitute a violation of statutory and constitutional principles. We are not persuaded by the Appellant's argument, and we affirm the decision of the lower court, except to the extent that the lower court would require payment of attorney fees within thirty days, in conflict with West Virginia Code § 29–21–16(g)(3) (1992), providing that the order is not enforceable during a period of imprisonment.

## I.

On March 6, 1995, the Appellant pled guilty to two counts of third degree sexual assault, and by order entered on June 5, 1995, he was sentenced to two consecutive one to five year prison terms and was ordered to pay $10,000 per count in fines, plus costs.[1] West Virginia Code § 61–8B–5(b) (1997) provides that "[a]ny person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one year nor more than five years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than one year nor more than five years."

On June 21, 1995, the Appellant's counsel moved for reduction[2] of the sentence, asking the court to take into consideration the amount of the fine in relation to the Appellant's ability to pay. The lower court denied that motion without hearing on July 11, 1995. On March 6, 1996, the lower court entered a general order pursuant to West Virginia Code § 62–4–17 (1997) directing defendants in Monroe County to pay all costs, fines, penalties and restitution within thirty days of the judgment order.[3]

A second motion for reduction was filed, pro se, on May 16, 1996, and was again denied without hearing by order entered on May 29, 1996.[4] The Appellant thereafter

---

1. In May 1994, the Appellant allegedly had forcible intercourse with one of his wife's fifteen-year-old twin daughters by a previous marriage. During the summer of 1994, the Appellant allegedly had intercourse with the other young girl. The Appellant was indicted on January 10, 1995, on two counts of third-degree sexual assault and two counts of sexual abuse by a guardian. The Appellant submitted a financial affidavit indicating that he had no monthly income and no assets; thus, by order dated November 10, 1994, the lower court found the Appellant indigent and appointed a lawyer to represent him.

2. Rule 35 of the West Virginia Rules of Criminal Procedure provides as follows:

Correction of Reduction of Sentence

(a) Correction of a sentence—The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time period provided herein for the reduction of sentence.

(b) Reduction of sentence—A motion to reduce a sentence may be made, or the court may reduce a sentence without motion within 120 days after the sentence is imposed or probation is revoked, or within 120 days after the entry of a mandate by the supreme court of appeals upon affirmance of a judgment of a conviction or probation revocation or the entry of an order by the supreme court of appeals dismissing or rejecting a petition for appeal of a judgment of a conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

3. The State concedes that the order requiring payment of attorney fees within thirty days is void to the extent that it conflicts with the provisions of West Virginia Code § 29–21–16(g)(3) relating to orders requiring the payment of attorney fees during a period of imprisonment.

4. The final statement of fines and costs assessed against the Appellant included the $10,000 per count fine and $15 reporter fee, authorized by West Virginia Code § 51–7–6 (1994); $30 prose-

filed a petition for appeal with this Court, contending that he does "not challeng[e] his plea and conviction, but wishes to challenge the imposed fines due to his inability to pay without undue hardship...." We granted that petition for appeal and appointed the Kanawha County Public Defender's Office as appellate counsel. This inquiry is most effectively resolved by separately addressing the issues of costs and fines.

## II.

### COSTS IMPOSED

■ The Appellant asserts that the lower court erred in charging him the costs of his court appointed attorney, primarily based upon the fact that the lower court failed to comply with the mandates of West Virginia Code § 29–21–16(g),[5] regarding an inquiry into the Appellant's ability to pay such costs without under hardship. Pursuant to section 29–21–16(g)(3), orders requiring repayment of attorney fees are not enforceable during a period of incarceration, unless the court finds, at the time of sentencing, that the

---

cuting attorney's fee, authorized by West Virginia Code § 59–2–17 (1997); $40 regional jail fund fee, authorized by West Virginia Code § 59–1–28a(c) (1997); $10 Crime Victims Compensation Fund fee, authorized by West Virginia Code § 62–5–10 (1997); $2 Law Enforcement Training and Certification Fund fee, authorized by West Virginia Code § 30–29–4 (1993); and $1421.54 court appointed attorney fees, for a total of $21,518.54 as of June 12, 1996. We find no error in the imposition of these fines.

**5.** That section provides, in pertinent part, as follows:

(g) In the circumstances and manner set forth below, circuit judges may order repayment to the state, through the office of the clerk of the circuit court having jurisdiction over the proceedings, of the costs of representation provided under this article:
(1) In every case in which services are provided to an indigent person and an adverse judgment has been rendered against such person, the court may require that person, and in juvenile cases, may require the juvenile's parents or custodian, to pay as costs the compensation of appointed counsel, the expenses of the defense and such other fees and costs as authorized by statute.
(2) The court shall not order a person to pay costs unless the person is able to pay without undue hardship. In determining the amount

person has sufficient assets to pay the amounts ordered or finds sufficient likelihood that the person will acquire those necessary assets in the foreseeable future. The State concedes that the lower court's order requiring repayment of appointed attorney's fees within thirty days is void to the extent that it conflicts with West Virginia Code § 29–21–16(g)(3), and we conclude that such order is unenforceable while the Appellant remains in prison. Upon his release, the Appellant is entitled to a hearing on his ability to pay the assessed attorney fees, in accordance with West Virginia Code § 29–21–16(g).

## III.

### FINES IMPOSED

■ The Appellant's sentence, pursuant to West Virginia Code § 61–8B–5(b) as set forth above, included fines of $10,000 per offense, for a total of $20,000. The Appellant maintains that the $20,000 fine was constitutionally excessive based upon his alleged inability to pay and upon the lower court's fail-

---

and method of repayment of costs, the court shall take account of the financial resources of the person, the person's ability to pay and the nature of the burden that payment of costs will impose. The fact that the court initially determines, at the time of a case's conclusion, that it is not proper to order the repayment of costs does not preclude the court from subsequently ordering repayment should the person's financial circumstances change.
(3) When a person is ordered to repay costs, the court may order payment to be made forthwith or within a specified period of time or in specified installments. If a person is sentenced to a term of imprisonment, an order for repayment of costs is not enforceable during the period of imprisonment unless the court expressly finds, at the time of sentencing, that the person has sufficient assets to pay the amounts ordered to be paid or finds there is a reasonable likelihood the person will acquire the necessary assets in the foreseeable future.
(4) A person who has been ordered to repay costs, and who is not in contumacious default in the payment thereof, may at any time petition the sentencing court for modification of the repayment order. If it appears to the satisfaction of the court that continued payment of the amount ordered will impose undue hardship on the person or the person's dependents, the court may modify the method or amount of payment.

ure to adequately justify[6] the imposition of such a fine. The State responds with the assertion that the United State's Constitution's Eighth Amendment prohibition on cruel and unusual punishment and the West Virginia constitutional requirement of proportional penalties[7] do not compel an inquiry into the ability to pay a fine prior to the imposition of that fine. The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In syllabus point four of *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983), we explained as follows:

> Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: "Penalties shall be proportioned to the character and degree of the offence.". Syllabus Point 8, *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980).

172 W.Va. at 267, 304 S.E.2d at 852, syl. pt. 4. In syllabus point five of *Cooper*, we continued:

> Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

172 W.Va. at 267–68, 304 S.E.2d at 852, syl. pt. 5. This Court has "traditionally examined

the constitutionality of sentences in light of the proportionality requirement ..." of Article III, Section 5.[8] *State v. Fortner*, 182 W.Va. 345, 364, 387 S.E.2d 812, 831 (1989). We have also acknowledged, however, that the proportionality analysis is not applicable to every type of sentence. *Id.* In syllabus point four of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981), we reasoned that "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." *Id.* at 524, 276 S.E.2d at 206. As noted by the Texas court in *Wright v. State*, 930 S.W.2d 131 (Tex.App.1996), "punishment that falls within the range authorized by statute" does not violate the prohibition against cruel and unusual punishment. *Id.* at 134.

Further, we have consistently held that "it is this Court's practice not to interfere with a sentence imposed within legislatively prescribed limits, so long as the trial judge did not consider any impermissible factors." *State v. Farr* 193 W.Va. 355, 358, 456 S.E.2d 199, 202 (1995) (citation omitted). In syllabus point two of *State v. Farmer*, 193 W.Va. 84, 454 S.E.2d 378 (1994), we explained: " 'Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syl. pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982)." 193 W.Va. at 85, 454 S.E.2d at 379; *see State v. Broughton*, 196 W.Va. 281, 470 S.E.2d 413 (1996). The Appellant's fine of $10,000 per count was within the statutory limit for punishment of his crime, and there is no evidence indicating that the lower court

---

*Id.*

**6.** We find no merit to the Appellant's assertion that the lower court failed to justify the imposition of the maximum fine permitted by statute. On the contrary, the record reflects numerous instances of consideration of facts and circumstances by the lower court which sufficiently justify its decision to impart the statutory maximum fine.

**7.** The complete text of Article III, Section 5 of the Constitution of West Virginia states:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. Penalties shall be proportioned to the character and degree of the offence. No person shall be transported out of, or forced to leave the State for any offence committed within the same; nor shall any person, in any criminal case, be compelled to be a witness against himself, or be twice put in jeopardy of life or liberty for the same offence.

**8.** *Accord State v. Glover*, 177 W.Va. 650, 658, 355 S.E.2d 631, 639 (1987).

considered any impermissible factor in setting the fine.

In *State v. Hopkins,* 192 W.Va. 483, 453 S.E.2d 317 (1994), the defendant argued that a $50 fine, designated by statute, constituted an unconstitutional taking. *Id.* at 486, 453 S.E.2d at 320. We found "nothing in the record to indicate that Mr. Hopkins' fines are excessive, shocking, violative of fundamental fairness, disproportionate, without penological justification or unnecessarily painful." *Id.* at 491, 453 S.E.2d at 325.

## IV.

## ABILITY TO PAY

■ The practical ramifications of the Appellant's alleged inability to pay the fines must also be addressed. While we find no impediment to the lower court's imposition of the statutory fine, we must also acknowledge that concepts of equal protection may be implicated in the attempt to collect the fine or in the attempt to impose sanctions upon the Appellant for failure to pay the fine. In syllabus point one of *State v. Haught,* 179 W.Va. 557, 371 S.E.2d 54 (1988), we explained as follows:

> Before a trial court conditions its recommendation for a defendant's parole upon the defendant's payment of statutory fines, costs and attorney's fees, the trial court must consider the financial resources of the defendant, the defendant's ability to pay and the nature of the burden that the payment of such costs will impose upon the defendant.

*Id.* at 558, 371 S.E.2d at 55.

Our decision in *Haught* was premised upon principles enunciated by the United States Supreme Court in *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). In that case, the Court succinctly stated that "[a] defendant's poverty in no way immunizes him from punishment." *Id.* at 669, 103 S.Ct. at 2071. The Court had encountered a defendant who had been ordered, as part of his sentence, to pay a fine

and make financial restitution. *Id.* at 661, 103 S.Ct. at 2066–67. Subsequent to partial payment by the defendant, he was laid off his job and consequently became unable to continue payments; the state then moved for a revocation of the defendant's probation for failure to pay the monies ordered. *Id.* at 663, 103 S.Ct. at 2068. The United States Supreme Court held that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. *Id.* at 672, 103 S.Ct. at 2072–73. It was not, however, the imposition of the fine which was denounced; it was the attempt to revoke probation based upon failure to pay a legitimately imposed fine.[9]

■ As we succinctly stated in syllabus point one of *Robertson v. Goldman,* 179 W.Va. 453, 369 S.E.2d 888 (1988), "[t]he right to the equal protection of the laws guaranteed by our federal and state constitutions blocks unequal treatment of criminal defendants based on indigency." *Id.* at 454, 369 S.E.2d at 889. In protecting the interests of indigent criminals, the United States Supreme Court has also held that it is unconstitutional to hold a prisoner longer than his maximum sentence because of his inability to pay fines or court costs. *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). Regarding the initial imposition of the fine, however, the Supreme Court in *Williams* emphasized that "nothing ... precludes a judge from imposing on an indigent, as on any defendant, the maximum penalty prescribed by law." *Id.* at 243, 90 S.Ct. at 2023.

■ Similarly, the Supreme Court has explained that it is unconstitutional to incarcerate a defendant convicted of an offense which did not otherwise carry a jail term in order to have him satisfy his fine. *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971). Yet, as recognized in *Williams* and reaffirmed in *Tate:*

---

9. The American Bar Association, in its Standards for Criminal Justice on Sentencing, has observed that requirements regarding the necessity of reviewing a defendant's ability to pay prior to imposing a fine must emanate from legislative directive. ABA Standards for Criminal Justice Sentencing, 18–3.16(d) (3d ed.1994).

The State is not powerless to enforce judgments against those financially unable to pay a fine; indeed, a different result would amount to inverse discrimination since it would enable an indigent to avoid both the fine and imprisonment for nonpayment whereas other defendants must always suffer one or the other conviction.

*Williams,* 399 U.S. at 244, 90 S.Ct. at 2024; *accord Tate,* 401 U.S. at 399, 91 S.Ct. at 671 (quoting *Williams,* 399 U.S. at 244, 90 S.Ct. at 2024).

In *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (*rehearing denied,* 411 U.S. 959, 93 S.Ct. 1919, 36 L.Ed.2d 418 (1973)), the United States Supreme Court explained that "[t]he Court has not held that fines must be structured to reflect each person's ability to pay to avoid disproportionate burdens. Sentencing judges may, and often do, consider the defendant's ability to pay, but in such circumstances they are guided by sound judicial discretion rather than by constitutional mandate." *Id.* at 22, 93 S.Ct. at 1290.

█ Based upon the foregoing, we hold that an individual is not excused from the imposition of the maximum sentence allowed under a statute simply because he is indigent, even if that sentence includes the imposition of fines pursuant to statute. Consistent with the principles of *Williams* and *Bearden,* however, while there is no prohibition against the imposition of the maximum penalty prescribed by law, indigent defendants may not be incarcerated solely because of their inability to pay court-ordered fines or costs. 399 U.S. 235, 243, 90 S.Ct. 2018, 2023, 26 L.Ed.2d 586, 461 U.S. 660, 667–68, 103 S.Ct. 2064, 2069–70, 76 L.Ed.2d 221. We therefore affirm the decision of the lower court with regard to the imposition of a fine upon the Appellant. The lower court's order requiring payment of attorney fees within thirty days, however, is in conflict with West Virginia Code § 29–21–16(g)(3), and is therefore reversed.

Affirmed, in part; reversed, in part.