290 S.E.2d 14 (1982)
STATE of West Virginia
v.
Michael M. TAMEZ.
No. 14715.
Supreme Court of Appeals of West Virginia.
February 24, 1982.
Dissenting Opinion April 6, 1982.
*15 Stephen W. Moreland, Romney, for Michael M. Tamez.
Chauncey H. Browning, Atty. Gen. and Thomas N. Trent, Asst. Atty. Gen., Charleston, for the State.
McHUGH, Justice:
This action is before this Court upon the petition of Michael M. Tamez (hereinafter *16 "defendant") for an appeal from his 1978 felony conviction in the Circuit Court of Hampshire County, West Virginia, of the offense of delivery of a controlled substance. On October 18, 1978, the defendant was sentenced to imprisonment for a term of not less than one nor more than 15 years.[1] This Court has before it the defendant's petition for a writ of error, all matters of record and the briefs filed by counsel.
On September 5, 1978, a Hampshire County grand jury returned an indictment charging that the defendant in June, 1978, "... did unlawfully and feloniously deliver and possess with intent to deliver, a controlled substance, to wit: Oxycodone ..." in violation of the West Virginia Uniform Controlled Substances Act.[2] On September 21, 1978, the defendant was brought to trial upon his plea of not guilty. On that date, the jury found the defendant guilty of "... delivery of oxycodone, a controlled substance, as charged in the indictment." The defendant's subsequent motions for a new trial were denied by the circuit court.
The record indicates that on the evening of June 16, 1978, a confidential informant and Trooper G. N. Griffith of the West Virginia Department of Public Safety met with the defendant in Romney, Hampshire County, West Virginia. At that time, Trooper Griffith was working as an undercover narcotics agent. Subsequently, the three drove to the residence of the defendant. Upon leaving the defendant's residence, the defendant displayed to the informant and Trooper Griffith a pipe allegedly filled with marihuana. The pipe was lit and passed among the parties, Trooper Griffith testifying subsequently that he simulated the smoking of marihuana. The defendant further displayed five yellow tablets.
Upon returning to Romney, the three entered the photography studio of the defendant's father. At the studio, the defendant sold two of the tablets for two dollars each to Trooper Griffith. Those tablets were subsequently identified as containing oxycodone, a controlled substance. The confidential informant did not witness the actual sale of the tablets to Trooper Griffith. The evidence further indicates that while in the studio the defendant dissolved a tablet and injected himself in the arm with the substance. The parties then left the studio.
At trial, the defendant submitted evidence to the effect that his possession of the tablets in question containing oxycodone was pursuant to a medical prescription and therefore lawful. Furthermore, the defendant at trial relied upon the theory of entrapment. The defendant contended that while under the influence of drugs, he was coaxed by Trooper Griffith into making the illegal sale.
The defendant contends before this Court (1) that the jury verdict was contrary to the weight of the evidence, (2) that the circuit court committed error in failing to require the State to disclose the identity of the confidential informant, (3) that the circuit court committed error in failing to give certain instructions offered by the defendant, (4) that a conflict exists between the indictment and the verdict of the jury and (5) that the circuit court committed error in denying the motion of the defendant for a new trial, that motion being based upon newly discovered evidence.
Nevertheless, we disagree with the contentions of the defendant and affirm his conviction. For purposes of discussion, some of these contentions will be combined.

I
As indicated above, the defendant contends that the circuit court committed error in failing to require the State to disclose the *17 identity of the confidential informant. The defendant further contends that as a result of newly discovered evidence he is entitled to a new trial. The newly discovered evidence consists of the sworn, written statement of the confidential informant. That statement was obtained by defense counsel subsequent to the defendant's conviction.
The defendant asserts that the nondisclosure of the identity of the confidential informant during the proceedings in circuit court violated his federal and state constitutional right to confront his accusers.[3] Furthermore, the defendant asserts that, having learned the nature of the informant's probable testimony, a new trial of the defendant could result in an acquittal. However, we find no merit in either assertion of the defendant.
In Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the petitioner was convicted of (1) selling heroin to "John Doe," a confidential informant, and (2) facilitating the concealment of heroin after illegal importation into the United States. During the transaction in question, a police officer, while hiding in the trunk of the informant's automobile, overheard the dialogue between the informant and the petitioner concerning the heroin sale. A second police officer observed the transaction from a distance. These officers testified against the petitioner at trial.
In Roviaro, the trial court permitted the government to refuse to disclose to the petitioner the identity of the confidential informant. The Supreme Court of the United States reversed, however, holding that nondisclosure of the informant's identity, under the circumstances, constituted reversible error.
The Supreme Court in Roviaro recognized the general privilege of the government to withhold from disclosure the identity of persons who furnish information of violations of law to police officers.[4] However, the Court held that under the circumstances of the transaction in question, the privilege did not apply. The Court noted that the confidential informant was the sole participant, other than the petitioner, in the transaction. As the Court stated:
Finally, the Government's use against the petitioner of his conversation with John Doe while riding in Doe's car particularly emphasizes the unfairness of the nondisclosure in this case. The only person, other than the petitioner himself, who could controvert, explain or amplify [the officer's] report of this important conversation was John Doe. Contradiction or amplification might have borne upon petitioner's knowledge of the contents of the package or might have tended to show an entrapment. 353 U.S. at 64, 77 S.Ct. at 629.
In Roviaro, the Court declined to establish an absolute rule with respect to the disclosure by the government of confidential informants. As the Court stated:
We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into *18 consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. 353 U.S. at 62, 77 S.Ct. at 628.
The general privilege discussed in Roviaro of the government to not disclose the identity of informants in criminal matters is recognized in this State. As we held in syllabus point one, State v. Haverty, W.Va., 267 S.E.2d 727 (1980):
A common law privilege is accorded the government against the disclosure of the identity of an informant who has furnished information concerning violations of law to officers charged with the enforcement of the law. However, disclosure may be required where the defendant's case could be jeopardized by nondisclosure.
See also Syl. pt. 2, State v. McCourt, W.Va., 283 S.E.2d 918 (1981); State ex rel. Lykens v. Bouchelle, 122 W.Va. 498, 500, 11 S.E.2d 119, 119 (1940); Syl. pt. 2, State v. Paun, 109 W.Va. 606, 155 S.E. 656 (1930).[5]
In State v. Haverty, supra, the evidence was conflicting as to whether an informant was present at the scene of an illegal sale and delivery of marihuana. The defendant was convicted of the sale and asserted on appeal that the informant's identity should have been disclosed by the State. The record indicated, however, that the defendant knew the identity of the informant prior to the time the defendant was convicted. Accordingly, in syllabus point 2 we held as follows: "Where the government has an obligation to identify its undercover informant or agent, its failure to do so will not ordinarily be error if the defense was already aware of the informant's identity."
In the action before this Court, it is undisputed that the illegal sale took place in the photography studio of the defendant's father and that the sale involved the transfer of money and tablets between the trooper and the defendant. Furthermore, the record indicates that the confidential informant, while in another section of the studio, did not observe the sale.
Therefore, unlike the facts in Roviaro, supra, the informant in this action was not directly involved in the illegal sale. In Roviaro, the government used the dialogue between the informant and the petitioner to incriminate the petitioner. Consequently, the court in Roviaro held that nondisclosure of the informant's identity was unfair. In the action before this Court the informant was not involved in the sale. Rather, the informant was used by the authorities to introduce the trooper to the defendant. We are of the opinion, therefore, that under the circumstances of this action, no error was committed by the circuit court in failing to require the government to disclose the identity of the confidential informant.
Nevertheless, upon learning the identity of the confidential informant subsequent to conviction and obtaining the informant's statement, the defendant asserts that he is entitled to a new trial.
In State v. Stewart, W.Va., 239 S.E.2d 777 (1977), the defendant, upon the basis of newly discovered evidence, sought relief from his conviction of delivery of a controlled substance. This Court agreed and awarded the defendant a new trial.
The defendant's conviction in Stewart was based upon the testimony of a police officer working as an undercover agent during the period in question. The testimony of the officer, however, was derived from the officer's records concerning his investigations. The defendant's newly discovered evidence indicated that those records were falsified. As this Court stated: "Here, the principal witness for the state, Caldwell, is severely impeached by his assistant, Ketchum, who indicated that the reports from which Caldwell derived his testimony were routinely altered and falsified." 239 S.E.2d at 785.
*19 In Stewart, this Court noted the West Virginia rule concerning newly discovered evidence. That rule states as follows:
A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.
239 S.E.2d at 782.
This Court in Stewart stated that the defendant's newly discovered evidence ought to produce an opposite result upon retrial. 239 S.E.2d at 785. Therefore, this Court concluded that the fourth rule described above concerning newly discovered evidence had been met. 239 S.E.2d at 785.
In the action before this Court, the statement of the informant was obtained by defense counsel on May 15, 1979. The defendant contends that the statement materially contradicts the testimony of Trooper Griffith and that a new trial should be awarded.
There is some indication in the record that the identity of the confidential informant was either known to the defendant or could have been obtained by the defendant prior to his conviction. If that were the case it would certainly be difficult for the defendant to obtain a new trial based upon newly discovered evidence derived from the informant. However, the record also indicates that the defendant could not have obtained the informant's identity prior to conviction. For purposes of this discussion, we will resolve that doubt in favor of the defendant and consider the May 15, 1979, statement of the informant to be, in fact, newly discovered evidence.
During his trial, the defendant asserted the theory of entrapment, and the evidence upon this issue was in conflict. The defendant testified that the trooper coaxed the defendant into making the sale. The trooper, however, testified that the defendant initiated the sale. An examination of the statement of the informer confirms that the informer did not witness the illegal sale. Moreover, there is nothing in the informer's statement to indicate that he overheard a conversation between the trooper and the defendant at the time the illegal sale was made. While it is true that in some ways the informer's statement contradicts or adds to the testimony of Trooper Griffith, that statement, in part, supports the trooper's testimony.[6]
The informant's statement essentially asserts that the defendant was under the influence of drugs at the time of the illegal sale. This Court concludes, however, that such assertion is cumulative of the testimony of the defendant.
This Court is of the opinion, therefore, that the circuit court did not commit error in refusing to grant the defendant a new *20 trial, the defendant asserting newly discovered evidence.
In this action, this Court was fortunate to have before it the May 15, 1979, statement of the confidential informant. Clearly, the contents of that statement were material to this appeal. In many cases, however, the identity of the informant remains unknown to the defendant. In some cases, the informant's identity should never be disclosed to the defendant. In other cases, disclosure is necessary to protect the right of the defendant to a fair trial. Accordingly, some mechanism should be adopted whereby this Court may review the refusal by the trial court to require the State to disclose to the defendant the informant's identity.
In Vol. II American Bar Association Standards For Criminal Justice 11-2.6(b) (2nd ed. 1980), the following standard, with respect to the disclosure of the identity of a confidential informant, provides, in part:
"Disclosure of an informant's identity shall not be required where such identity is a prosecution secret and where a failure to disclose will not infringe the constitutional rights of the accused."[7] That standard results in the need for a procedure by which the trial court may rule upon the disclosure issue. Accordingly, as provided by Vol. II American Bar Association Standards For Criminal Justice 11-4.6 (2nd ed. 1980):[8]
Upon request of any person, the court may permit any showing of cause for denial or regulation of disclosures, or any portion of such showing, to be made in camera. A record shall be made of both in court and in camera proceedings. Upon the entry of an order granting relief following a showing in camera, the entire record of the in camera portion of the showing shall be sealed, preserved in the records of the court, and made available *21 to the appellate court in the event of an appeal.
Comparable to American Bar Association standard 11-4.6, providing for an in camera hearing with respect to questions such as the identity of an informant, W.Va.R. Crim.P. 16(d)(1) provides as follows:

Protective and Modifying Orders. Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate. Upon motion by a party, the court may permit the party to make such showing, in whole or in part, in the form of a written statement to be inspected by the judge alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the party's statement shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.
The language of W.Va.R.Crim.P. 16(d)(1) is the same as the language found in Fed.R. Crim.P. 16(d)(1). The West Virginia Rules of Criminal Procedure were effective October 1, 1981.
As American Bar Association standard 11-4.6 and W.Va.R.Crim.P. 16(d)(1) indicate, it would be inappropriate for the State in open court to attempt to establish reasons for nondisclosure of an informant's identity. Consequently, we hold that when the State in a criminal action refuses to disclose to the defendant the identity of an informant, the trial court upon motion shall conduct an in camera inspection of written statements submitted by the State as to why discovery by the defendant of the identity of the informant should be restricted or not permitted. A record shall be made of both the in court proceedings and the statements inspected in camera upon the disclosure issue. Upon the entry of an order granting to the State nondisclosure to the defendant of the identity of the informant, the entire record of the in camera inspection shall be sealed, preserved in the records of the court, and made available to this Court in the event of an appeal. In ruling upon the issue of disclosure of the identity of an informant, the trial court shall balance the need of the State for nondisclosure in the promotion of law enforcement with the consequences of nondisclosure upon the defendant's ability to receive a fair trial. The resolution of the disclosure issue shall rest within the sound discretion of the trial court, and only an abuse of discretion will result in reversal. W.Va.R.Crim.P. 16(d)(1).

II
The other errors raised by the defendant in this appeal include the assertion by the defendant that inasmuch as the State failed to prove that the defendant unlawfully possessed oxycodone, the defendant was entitled to a verdict of not guilty. This assertion is based upon evidence submitted by the defendant indicating that he possessed oxycodone pursuant to a lawful prescription. It is upon this possession issue that the defendant contends that the indictment, certain instructions and the verdict of the jury were improper.
As stated in the indictment, the defendant was charged with a violation of W.Va. Code, 60A-4-401 [1971]. The language of the indictment followed substantially the language of W.Va.Code, 60A-4-401(a) [1971].[9] That section states as follows: "Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."
On the other hand, unlawful possession of a controlled substance is an offense pursuant to W.Va.Code, 60A-4-401(c) [1971]. As W.Va.Code, 60A-4-401(c) [1971], provides in part: "It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a *22 valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this chapter."
In State v. Rector, W.Va., 280 S.E.2d 597, 605 (1981), we stated as follows: "Specifically, the possession and delivery (transfer) of a controlled substance are separate offenses, possession being an offense pursuant to W.Va.Code, 60A-4-401(c) and delivery or possession with the intent to deliver being an offense pursuant to W.Va.Code, 60A-4-401(a)."
Simply stated, the defendant in this action was not charged with the unlawful possession of a controlled substance. As indicated in W.Va.Code, 60A-4-401(c) [1971], had the defendant been charged with unlawful possession, his evidence concerning lawful possession by medical prescription would have been more appropriate. Delivery, however, is a separate offense, and we are of the opinion that no error concerning the indictment, instructions or jury verdict exists in the record sufficient to reverse the defendant's delivery conviction.
This Court has carefully considered all other errors raised by the defendant, including the defendant's assertion that the verdict of the jury was contrary to the evidence, and concludes the same to be without merit. The conviction of the defendant is, therefore, affirmed.
Affirmed.
McGRAW, Justice, dissenting:
I dissent from syllabus point 3 of the majority opinion for the reason that article 3, section 14 of the Constitution of the State of West Virginia provides: "In all ... trials, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witness against him ..." and the Sixth Amendment to the Constitution of the United States provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation; [and] to be confronted with the witnesses against him..." Syllabus point 3 of the majority opinion and the rationale expressed therefor does not comport with these fundamental constitutional mandates.
NOTES
[1] As indicated in the briefs filed by counsel, the defendant was incarcerated at the Huttonsville Correctional Center, Huttonsville, West Virginia. On April 1, 1981, the defendant was released upon parole.
[2] Oxycodone is a controlled substance pursuant to the West Virginia Uniform Controlled Substances Act. W.Va.Code, 60A-2-206(b)(1)(N) [1981]. Specifically, the defendant was charged with violating the provisions of W.Va.Code, 60A-4-401 [1971].
[3] U.S.Const., amend. VI, provides, in part, as follows: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." Furthermore, W.Va.Const., art. III, § 14, provides, in part, as follows: "... [T]he accused shall ... be confronted with the witnesses against him...."
[4] In Roviaro, supra, the Court stated as follows:

What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. [citations omitted] The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation. 353 U.S. at 59, 77 S.Ct. at 627.
[5] In State v. Paun, supra, we held in syllabus point 2 as follows: "The proper administration of the law ordinarily forbids requiring an officer to disclose his source of information regarding a crime."
[6] The May 15, 1979, statement of the informer provides, in part, as follows:

A. Yeah. See, like, all I thought I was doing was just introducing him to Mike [the defendant], you know, and then, like, then they started, Mike started trying to sell drugs to him and stuff, and it just got out of hand.
* * * * * *
Q. Okay, did you hear anybody ask him anything about drugs?
A. Well, no, Mike was the only one that said anything about drugs.
Q. Okay, did he say he wanted to buy any drugs?
A. No, he asked, he said he had some to sell.
Q. Mike said he had some drugs to sell?
A. Yeah.
Statement of confidential informant, May 15, 1979 at 4 and 5.
[7] In Vol. II American Bar Association Standards For Criminal Justice, supra, the following commentary appears with respect to standard 11-2.6(b):

Paragraph (b) protects the identity of an informant under appropriate circumstances. The prosecutor is interested in protecting the identity of informants in order to create a climate in which informants will be willing to cooperate with police and prosecution authorities without fear of retaliation from defendants. Because the cooperation of informants has proved to be valuable in law enforcement efforts, the prosecution has a legitimate interest in protecting the informant. The standard recognizes that interest by protecting the identity of informants. In cases where either the existence of the informant or the nature and extent of the information supplied by the informant have been questioned by the defense, the court may use the in camera proceedings authorized by standard 11-4.6 in order to preserve the informant's anonymity while obtaining the verification requested by the defense.
In cases where the identity of the informant has not been kept secret, no legitimate prosecutorial interest is served by declining to name the informant. Similarly, the prosecutor's interest in secrecy may be outweighed by the defendant's interest in discovering the facts of the offense where the informant was either a participant or intimately involved in the underlying offense. Finally, the informant exemption does not apply where the prosecutor intends to breach the secret of the informant's identity by having the informant testify at a hearing or a trial (but the prosecutor may apply, pursuant to standard 11-4.4, for a protective order to delay the disclosure of the informant's identity).
Few states require automatic disclosure of the identity of an informant upon request of defense counsel. However, some states have recognized that the defendant's right to compulsory process may require production of the informant. In camera proceedings and other innovative procedures have been established to accommodate the conflicting interests of the defendant and the state.
[8] In Vol. II American Bar Association Standards For Criminal Justice, supra, the commentary to standard 11-4.6 states, in part, as follows:

The procedure for in camera proceedings may be requested by the prosecution, the defense, or a third party. The court normally should grant such a request when arguably confidential information must be revealed to the court before it can make a determination on the discoverability of the items in question.
The provision for making and preserving a record ensures that the court's ruling can be reviewed on appeal and thus protects any excluded parties from arbitrary or capricious action. The provision for sealing the record in the event that disclosure is denied or regulated ensures the continued confidentiality of information revealed during the in camera proceedings.
[9] The indictment of the defendant stated, in part, that the defendant "... did unlawfully and feloniously deliver and possess with intent to deliver, a controlled substance, to wit: oxycodone, a narcotic drug, as listed in the Uniform Controlled Substances Act...."