Mary DOE, as best friend of John Doe,
and Linda Roe, as best friend of
Robert Doe, Plaintiffs,

v.

Rayshawn HUDGINS and the Chicago
Housing Authority, Defendants.

No. 97 C 0106.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 23, 1997.

Standish E. Willis, Chicago, IL, for Plaintiffs.

Kathleen S. Wengel, Chicago Housing Authority Legal Department, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

The Chicago Housing Authority ("CHA")[1] moves the Court for a Protective Order pursuant to Federal Rule of Civil Procedure 26(c) to prevent discovery of materials subpoenaed by Plaintiffs Mary Doe and Linda Roe. The CHA asserts that a provision of the Illinois Freedom of Information Act ("FOIA"), 5 ILCS 140/7 § 7(1)(c)(i), pre-cludes compliance with Plaintiffs' subpoena for records relating to investigations of Defendant Rayshawn Hudgins, a CHA police officer ("Hudgins"). Plaintiffs argue that the material should be disclosed because the information sought is indispensable to filing an amended complaint against the CHA under 42 U.S.C. § 1983 ("section 1983") and they have no other means of obtaining the information. Plaintiffs believe that this discovery against the CHA may enable them to allege a claim against the CHA for failure to adequately supervise Hudgins and to adequately investigate allegations of misconduct. For the reasons set forth below, the Court grants the CHA's motion to prevent disclosure at this time.

### I. BACKGROUND FACTS

In their complaint filed on January 8, 1997, Plaintiffs allege that on April 28, 1996, Hudgins forced John Doe at gun point to engage in sexual acts and that on September 21, 1996, Hudgins forced Robert Roe, again at gun point, to engage in sexual acts and also struck Roe about the face and head. In Counts I—IV, Plaintiffs seek redress against Hudgins under section 1983, alleging that Hudgins violated their Fourth ·Amendment rights by using excessive force and by falsely arresting and imprisoning them without probable cause. In Counts V—X, Plaintiffs bring state claims against Hudgins for assault and battery, false arrest and imprisonment, and sexual assault. Judge George M. Marovich granted CHA's Motion to Dismiss Plaintiffs' Counts XI and XII against the CHA for *respondeat superior* liability arising from Hudgins actions because sexual acts committed by a police officer are outside the scope of an officer's employment. Memorandum Opinion and Order, June 16, 1997.

Criminal cases against Hudgins are pending in state court; however, no trial date has been. set because the Cook County State's Attorney's investigation is still active. Hudgins is free on bond.

On July 18, 1997, Plaintiffs served a subpoena on the CHA requesting Hudgins' complete personnel file and all records related to

---

1. The counts against the CHA have been dismissed; thus, the CHA is no longer a party.

Memorandum Opinion and Order, June 16, 1997, Judge George M. Marovich.

investigations by the CHA police or other agencies into allegations by six individuals of sexual abuse or other misconduct by a CHA police officer. On July 29, 1997, the CHA filed the present Motion For A Protective Order Or, In the Alternative, For An *In Camera* Examination to prevent disclosure. At a hearing on September 4, 1997, Hudgins' criminal defense attorney gave consent to the CHA to release the personnel records to Plaintiffs. Consequently, the Court ordered that a copy of the personnel file, absent any investigatory records, be released to Plaintiffs. The Court then conducted an *in camera* examination of the investigatory records.

## II. FEDERAL COMMON LAW

■ Discovery in civil actions brought in federal court is governed by the Federal Rules of Civil Procedure. The Federal Rules of Civil Procedure mandate very broad discovery. "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Federal Rule of Evidence 501 supplies the structure for determining whether material requested in discovery is privileged:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Because Plaintiffs seek the requested materials in order to establish a claim under federal law, the determination of whether the state law privilege should be allowed will be determined by federal common law. *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058, 1061 (7th Cir.1981). The exis-

tence of supplementary state law claims does not require a different result. *Id.,* n. 3.

■ Several principles guide the Court's determination of whether the state law privilege should be recognized in this case. First, evidentiary privileges are not favored and should be narrowly construed because they exclude relevant evidence and impede the fact-finding process. *Id.* Second, the Court should consider the particular factual circumstances of the case. *Id.* Finally, the Court should weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case. *Id.*

## III. CONSIDERATION OF STATE LAW PRIVILEGES

■ Although the Court is not bound by state law privileges in federal cases, it may consider state law in determining whether the state law privilege asserted by the CHA under the Illinois FOIA should be allowed. *Id.; United States v. Wilson,* 960 F.2d 48, 50 (7th Cir.1992), *cert. denied* 506 U.S. 896, 113 S.Ct. 275, 121 L.Ed.2d 202 (1992) (after balancing competing interests, Illinois statute creating a privilege for unemployment records did not apply in a federal prosecution for mail fraud). A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy. *United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976). A state's expectation of protection of its citizens should not be defeated by a "mechanical" application of a federal rule. *Memorial Hospital,* 664 F.2d at 1061.

### A. Qualified Privilege for Law Enforcement Investigatory Files

The CHA argues that disclosure of the requested investigatory materials is precluded by a provision of the Illinois FOIA because disclosure might interfere with state criminal proceedings currently pending against Hudgins. The relevant provision, 5 ILCS 140/7 § 7(1)(c)(i) states:

§ 7. Exemptions.

(1) The following shall be exempt from inspection and copying:

(c) Records compiled by any public body for administrative enforcement proceedings and any law enforcement or correctional agency for law enforcement purposes or for internal matters of a public body, but only to the extent that disclosure would:

(i) interfere with pending or actually and reasonably contemplated law enforcement proceedings conducted by any law enforcement or correctional agency.

■■■ Under Illinois law, the FOIA exemptions are not dispositive of a discovery request. *In re Marriage of Daniels*, 240 Ill.App.3d 314, 326, 180 Ill.Dec. 742, 750, 607 N.E.2d 1255, 1263 (1st Dist.1992). The FOIA does not create an evidentiary privilege because the statute concerns disclosure to the public generally, not disclosure to a specific litigant in response to discovery in litigation. *Id.* However, the *Daniels* court acknowledged a "strong correlation" between the common law, the law enforcement investigative evidentiary privilege and the analogous exemptions in the state and federal Freedom of Information Acts.[2] *Daniels*, 240 Ill.App.3d at 325, 180 Ill.Dec. at 749, 607 N.E.2d at 1262. Courts rely on the FOIA exemptions as guidelines in balancing public policy concerns against the vital and important needs of litigants in the discovery process. *Daniels*, 240 Ill.App.3d at 326, 180 Ill.Dec. at 749, 607 N.E.2d at 1263. The courts must give appropriate weight to the policies underlying the FOIA protections and "compare them with the factors supporting discovery in a particular lawsuit." *Daniels*, 240 Ill.App.3d at 327, 180 Ill.Dec. at 750, 607 N.E.2d at 1263 (*quoting Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C.Cir.1984)).

■■■ The purpose of the law enforcement investigative privilege is to protect law enforcement efforts from harm that might arise from public disclosure of investigatory files. *Daniels*, 240 Ill.App.3d at 330, 180 Ill.Dec. at 752, 607 N.E.2d at 1265; *Black v. Sheraton Corp. of America*, 564 F.2d 531, 541 (D.C.Cir. 1977). The privilege preserves the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation and prevents interference with the investigation. *In re Department of Investigation of New York*, 856 F.2d 481, 484 (2nd Cir.1988). Law enforcement operations have little hope of being effective if conducted in full public view. *Daniels*, 240 Ill.App.3d at 330, 180 Ill.Dec. at 752, 607 N.E.2d at 1265. The common law has generally recognized (1) a privilege protecting information gathered in the course of an enforcement investigation or proceeding, (2) a privilege against disclosing the identity of informers, and (3) a privilege for information which might compromise the effectiveness of novel investigative techniques. *Daniels*, 240 Ill.App.3d at 332, 180 Ill.Dec. at 753, 607 N.E.2d at 1266. After an *in camera* review, the Court finds that novel investigative techniques are not at issue in the present case; thus, the Court's focus is the ongoing criminal investigation and pending criminal proceedings against Hudgins and the identity of informants who provided the CHA Internal Inspections Division with information.

■■■ The investigative privilege is not an absolute bar to discovery. The party claiming the privilege, the CHA, bears the burden of justifying application of the privilege. *Id.* The CHA must explain with particularity the reasons that each document or class of documents is privileged. *Id.* Unless the government, through competent declarations, shows the court what law enforcement interests would be harmed, how disclosure under a

---

**2.** Because the relevant provision in the Illinois FOIA parallels an analogous provision in the federal Freedom of Information Act, 5 U.S.C. § 552(b)(7), Illinois courts have often adopted reasoning found in federal court decisions. *Griffith Laboratories U.S.A. v. Metropolitan Sanitary Dist. of Chicago*, 168 Ill.App.3d 341, 345, 119 Ill.Dec. 82, 85, 522 N.E.2d 744, 747 (1st Dist. 1988); *see also Daniels* 240 Ill.App.3d at 325, 180 Ill.Dec. 742, 607 N.E.2d at 1262; *Baudin v. City of Crystal Lake*, 192 Ill.App.3d 530, 536, 139 Ill.Dec. 554, 557–58, 548 N.E.2d 1110, 1113–14 (2nd Dist.1989).

protective order would cause the harm, and how much harm there would be, the court cannot conduct a meaningful balancing analysis. *Kelly v. City of San Jose,* 114 F.R.D. 653, 669 (N.D.Cal.1987).

### B. The Public Interest Versus the Needs of the Plaintiffs

■ Balancing the public interest in protecting police investigations against the needs of civil rights plaintiffs is a difficult task. The Court will consider ten factors relied upon by the *Daniels* court and first enunciated in *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 (E.D.Pa.1973) as considerations that should be examined "in the context of discovery of police investigation files in a civil rights case," *see Daniels,* 240 Ill. App.3d at 333–37, 180 Ill.Dec. at 754–56, 607 N.E.2d at 1267–69:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

(2) the impact upon persons who have given information of having their identities disclosed;

(3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;

(4) whether the information sought is factual data or evaluative summary;

(5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

(6) whether police investigation has been completed;

(7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation;

(8) whether the plaintiff's suit is non-frivolous and brought in good faith;

(9) whether the information sought is available through other discovery or from other sources; and

(10) the importance of the information sought to the plaintiff's case.

In this case, the Court is especially concerned about interfering with the on-going criminal investigation and prosecution of Hudgins and the importance of the requested information to Plaintiffs.

### 1. The Public Interest

The CHA argues against disclosure because "it might negatively and irreparably interfere with the State's prosecution" of Defendant Hudgins by disclosing witness statements while the police investigation is ongoing, or cause apprehension in the witnesses, or alternatively, prejudice the criminal defense. CHA Memo of Law, p. 6. However, the CHA contends that, unlike most petitioners asserting the investigative evidentiary privilege, it is not privy to and does not control the investigative and prosecutorial efforts being made against Hudgins. Thus, the CHA believes it is not in a position to speak to: (1) the extent to which disclosure will impede investigations in general by discouraging citizens from cooperating with the police; (2) the extent to which disclosure will impede the investigation against Defendant; (3) the impact of disclosure upon claimants and witnesses; (4) the degree to which internal police investigations will be chilled; (5) whether the police investigation has been completed (the Cook County State's Attorney's investigation is still active); and (6) whether the requested material is available through other discovery or from other sources. *See Frankenhauser,* 59 F.R.D. at 344 (factors 1, 2, 3, 6, and 9). The CHA warns against second-guessing the impact that disclosure might have on the security of the witnesses and the presumed innocence of Hudgins.

### 2. Plaintiffs' Needs

Plaintiffs argue that the requested materials will enable them to establish a complaint against the CHA under section 1983. Plaintiffs seek to establish liability based on the CHA's failure to adequately supervise Defendant and failure to adequately investigate allegations of misconduct.

A municipality cannot be held liable under section 1983 for the tortious actions of a police officer simply because the officer was an employee of the city. *Robles v. City of Fort Wayne,* 113 F.3d 732, 734–35 (7th Cir.

1997). The Supreme Court has rejected *respondeat superior* liability under section 1983. *Id.* at 735. For the Plaintiffs to recover from the CHA, or the City of Chicago, they "must establish a direct causal link between a custom or policy of the City and the unconstitutional conduct" that they allege. *Id.* (*citing Bryan County of Bd. of County Comm'rs v. Brown,* —— U.S. ——, ——, 117 S.Ct. 1382, 1388–89, 137 L.Ed.2d 626 (1997)).

However, only "limited circumstances" give rise to section 1983 municipal liability based on failure to act. *Robles,* 113 F.3d at 735 (plaintiff alleged municipal liability based on a failure to train). The failure to act may serve as the basis for section 1983 liability only where the failure amounts to "deliberate indifference to the rights of persons with whom the police come into contact." *Id.* Plaintiffs may establish that the CHA was deliberately indifferent to their constitutional rights by showing that the CHA failed to act "after learning of a pattern of constitutional violations involving the exercise of police discretion." *Id.* Deliberate indifference is found where a city fails to act in the face of "actual or constructive notice that such a failure is likely to result in constitutional deprivations." *Id.*

Because Plaintiffs seek the CHA's investigatory files to establish that the CHA had actual or constructive notice of a pattern of constitutional violations by Hudgins, or other CHA officers, the first criterion the Court considered in its *in camera* examination of the files was the date of each document. Any document that was dated after September 21, 1996, the date of the second alleged sexual assault, was excluded from consideration for disclosure because that document would not bolster Plaintiffs' argument that the CHA had any prior notice of constitutional deprivations. Next, the Court excluded from consideration those documents that made no reference to Hudgins and thus would provide no link between the CHA and possible unconstitutional misconduct by Hudgins.

Two policy concerns weigh in favor of disclosure of certain remaining documents that date prior to the second alleged sexual assault. The first is simply the broad federal mandate for discovery in all civil actions. *Wood v. Breier,* 54 F.R.D. 7, 10 (E.D.Wis. 1972). The second concern is reflected in the purpose of section 1983. *Id.* Each citizen acts as a private attorney general, guarding for all of us the individual liberties enunciated in the Constitution. *Bowe v. Colgate–Palmolive Co.,* 416 F.2d 711, 715 (7th Cir. 1969). Through section 1983, "citizens are encouraged to police those who are charged with policing us all." *Wood,* 54 F.R.D. at 11. Thus, the *Wood* court concluded that it is especially important that section 1983 suits be "resolved by a determination of the truth rather than by a determination that the truth shall remain hidden." *Id.*

In *Wood,* the Chief of Police of the Milwaukee Police Department moved for a protective order to prevent disclosure of a police investigatory file relating to the alleged assault by a police officer. 54 F.R.D. at 8. The court noted that most courts addressing the issue have held that general discovery should be barred from an on-going law enforcement investigation but that discovery should usually be permitted once investigation and prosecution are completed. *Id.* at 11 (*see* collected cases at 12 n. 18; *see also Kelly,* 114 F.R.D. at 662; *Daniels,* 240 Ill.App.3d at 335–36, 180 Ill.Dec. 742, 607 N.E.2d at 1268 (noting the continuing need to protect confidential informants' names even after the investigation is terminated)). However, the investigation in *Wood* was complete and no prosecution was contemplated. *Id.* at 12. The court also found, after an *in camera* examination, that almost all the material in the file was of a factual nature, consisting of "either firsthand reports by officers or summaries of interviews with policemen made by police investigators," with no recommendations, criticisms, or policy discussion. *Id.* at 10. Thus, in light of the important policies discussed above of broad discovery and enforcement of civil rights actions, as well as the importance of the material to the plaintiff's case, the court denied defendant's motion and allowed the discovery. *Id.* at 13.

In *Frankenhauser,* another civil rights action against a police officer, the court considered the ten factors discussed above in balancing the public interest against the needs

of the litigants and allowed discovery of the signed statements of witnesses, factual data in police reports, and analysis of physical evidence. 59 F.R.D. at 345. The investigation was complete, no criminal charges had been brought, and the discovery sought was of extreme importance to the plaintiff's case. *Id.* Nevertheless, the court did not allow discovery of the "evaluative summary portion of the police investigative reports." *Id.*

In the instant case, however, unlike the circumstances in *Wood* and *Frankenhauser,* criminal proceedings are currently pending against Hudgins. Plaintiffs have pointed to no case, and this Court has found none, where a court ordered disclosure of investigatory files while criminal proceedings were pending. The Court holds that the public interest in favor of non-disclosure outweighs Plaintiffs' interest in obtaining access to the CHA internal investigation reports dated August 4 and September 9, 1996.

The Court does not comment on the likelihood that these reports dated before the second alleged sexual assault will establish that the CHA failed to act after actual or constructive notice that such a failure was likely to result in constitutional deprivations, or that any such failure rose to the level of deliberate indifference. Nevertheless, the Court finds that these reports dated before the second alleged sexual assault may assist Plaintiffs' case and should be disclosed at that point when injurious impact on the criminal proceedings and potential witnesses is no longer a concern. Although the Court recognizes the importance of broad discovery and the enforcement of civil rights actions, the Court will not risk impairment to state criminal proceedings or the security of complainants and witnesses until these concerns are allayed. The Court finds that if and when Hudgins receives copies of the reports at issue during the criminal proceedings, or when the criminal proceedings terminate, disclosure will pose no risk. At that point, Plaintiffs will be entitled to disclosure.

### IV. CONCLUSION

For the foregoing reasons, **the CHA's Motion for a Protective Order to prevent discovery at this time is GRANTED. Howev-**er, **Plaintiffs are entitled to disclosure of any investigative document that refers to Defendant Hudgins and is dated prior to September 21, 1996, on the earlier to occur of: 1) receipt of copies of these documents by Hudgins in the course of the pending criminal proceedings; or 2) when the pending criminal proceedings terminate.**