542 S.E.2d 83

**Donald MACLAY and Karen Maclay, Plaintiffs,**

v.

**Robert C. JONES, individually and in his official capacity as a West Virginia State Trooper; John Morrison, John Alexander, John Bragg and Trooper X, an unknown trooper, in their official capacities as members of the West Virginia State Police, and the West Virginia State Police, Defendants.**

No. 27776.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 24, 2000.

Decided Dec. 1, 2000.

Mary Ellen Griffith, Bell & Griffith, Princeton, for Plaintiffs.

Ancil G. Ramey, Jeffrey K. Phillips, Steptoe & Johnson, Charleston, for Defendants.

SCOTT, Justice:

This case arises on certified questions from the Circuit Court of Mercer County and presents issues concerning civil discovery relative to an internal affairs investigation conducted by the West Virginia State Police in connection with allegations of police misconduct. The questions presented are as follows:

1. Where civil discovery is sought of records of a police internal affairs investigation, is the compelled production of such records prohibited by a common law (1) law enforcement privilege; (2) executive privilege; or (3) official information privilege?

2. Where civil discovery is sought of records of a West Virginia State Police internal investigation, is the compelled production of such records prohibited by statute pursuant to (1) W.Va.Code § 29B–1–4(4), which exempts from the Freedom of Information Act, "Records of law-enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law-enforcement agencies which are maintained for internal use in matters relating to law enforcement;" (2) 81 C.S.R. 10–6.3, which provides, "All documents concerning complaints alleging employee misconduct shall be considered confidential;" and (3) 81 C.S.R. 10–3.3, which provides, "The Superintendent shall ensure the confidentiality of all documents and reports relating to the investigation of any complaint through strict control of files both within and outside the Unit's offices?"

3. Where civil discovery is sought of State Police personnel records, is the compelled production of such records prohibited by statute pursuant to W.Va.Code § 29B–1–4(2), which exempts from the Freedom of Information Act, "Information

of a personal nature such as that kept in a personal, medical or similar file, if the public disclosure thereof would constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance?"

Upon consideration of these three questions, we answer them in the negative.[1]

### I. Factual and Procedural Background

Ms. Karen Maclay is the former wife of Trooper Ronald C. Jones. She alleges that, following a complaint she and her husband Donald Maclay made to the West Virginia State Police (" State Police") in the Spring of 1998 concerning harassment by Trooper Jones, Mr. Maclay was arrested for illegally registering to vote. During the interrogation following the arrest, Mr Maclay alleges that he was physically assaulted by an unknown Trooper. The Maclays (hereinafter "Plaintiffs") filed the underlying civil action against Trooper Jones and the State Police [2] on May 12, 1999, asserting claims of denial of due process, cruel and unusual punishment, assault, battery, conspiracy, intentional infliction of emotional distress, and negligent supervision.

In response to a notice of deposition [3] and subpoena duces tecum,[4] through which Plaintiffs requested records relative to the internal affairs investigation of complaints filed against Trooper Jones as well as the trooper's personnel file,[5] Defendants filed a motion seeking a protective order. Treating the motion as a partial summary judgment ruling, the lower court denied the same, rejecting Defendants' assertion that both statutory and common law privileges were applicable. Based on its conclusion that "rejection of the

defendant's assertion of privileges with respect to police internal affairs documents would preclude meaningful appellate review," the circuit court chose to certify the above three questions for this Court's resolution.[6]

### II. Discussion

Defendants suggest that this Court should adopt an evidentiary privilege, which would govern the disclosure of the requested police materials. As support for their theory that the items requested through discovery are privileged, Defendants cite both federal common law as well as statutory and regulatory provisions pertinent to this state's Freedom of Information Act ("FOIA"), West Virginia Code §§ 29B–1–1 to –7 (1998).

#### A. Common Law Privilege

Turning first to the issue of whether a common law privilege exists, Defendants acknowledge that West Virginia is not among the group of states that have chosen to recognize a qualified privilege for law enforcement investigatory materials. *See, e.g., In re Marriage of Daniels,* 240 Ill.App.3d 314, 180 Ill.Dec. 742, 607 N.E.2d 1255, 1265 (1992) (recognizing a limited privilege for law enforcement investigatory information and acknowledging that a " 'qualified common law privilege . . . exists to prevent "the harm to law enforcement efforts which might arise from public disclosure of . . . investigatory files" ' ") (quoting *Raphael v. Aetna Cas. & Surety Co.,* 744 F.Supp. 71, 74 (S.D.N.Y. 1990)); *see also Morrissey v. City of New York,* 171 F.R.D. 85, 90 (S.D.N.Y.1997) (discussing how "focus of the law enforcement privilege is to protect information relating to investigations" and observing that this type of privilege is aimed at the "ability of the police department to conduct effective law

---

1. The circuit court similarly answered each of these questions in the negative.

2. Also named as defendants are Trooper X, an unknown trooper, and Troopers John Alexander and John Bragg.

3. The notice was directed to Sergeant Gordon A. Ingold.

4. The subpoena directed Sergeant Ingold to bring with him: "All documents pertaining to the June 2, 1999, complaint made to Sgt. Bragg by Karen Jones and Don Maclay and the 6/24/98

Complaint filed by Don Maclay and all documents pertaining to professional standards, complaints, and/or disciplinary action regarding Trooper Ronald C. Jones."

5. Trooper Jones' personnel file was sought through requests for production.

6. *See* W.Va.Code § 58–5–2 (Supp.2000) (setting forth parameters for certification of questions to this Court by circuit courts).

enforcement, presently and in the future....").

In applying this common law privilege to discovery issues concerning police investigatory files in a civil rights case, the federal district court in *Doe v. Hudgins*, 175 F.R.D. 511 (N.D.Ill.1997), adopted the following ten-factor balancing test:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

(2) the impact upon persons who have given information of having their identities disclosed;

(3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;

(4) whether the information sought is factual data or evaluative summary;

(5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

(6) whether police investigation has been completed;

(7) whether any intradepartmental disciplinary proceedings ·have arisen or may arise from the investigation;

(8) whether the plaintiff's suit is non-frivolous and brought in good faith;

(9) whether the information sought is available from other discovery or from other sources; and

(10) the importance of the information sought to the plaintiff's case.

*Id.* at 515. This ten-factor test, which was first articulated in *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa.1973), is routinely

used by courts to resolve discovery issues involving internal police investigations.[7]

■ While this state has never adopted an all-encompassing law enforcement privilege, we do recognize one limited aspect of the privilege which involves protecting the confidentiality of informants.[8] In syllabus point one of *State v. Haverty*, 165 W.Va. 164, 267 S.E.2d 727 (1980), this Court held that: "A common law privilege is accorded the government against the disclosure of the identity of an informant who has furnished information concerning violations of law to officers charged with the enforcement of the law. However, disclosure may be required where the defendant's case could be jeopardized by nondisclosure." In *State v. Tamez*, 169 W.Va. 382, 290 S.E.2d 14 (1982), we set forth the procedures to be followed in a hearing on the issue of disclosing the identity of a confidential informant. *Id.* at 382–83, 290 S.E.2d at 15, syl. pt. 3. Those procedures involve an *in camera* proceeding to permit the trial court to inspect the written statement submitted by the State in explanation of why discovery should either be restricted or not permitted in any fashion. *Id.*

Courts in both California and New York have adopted an "official information" privilege, which they apply to information sought in connection with civil rights cases against state and local law enforcement agencies. *See Kelly v. San Jose*, 114 F.R.D. 653 (N.D.Cal.1987); *King v. Conde*, 121 F.R.D. 180 (E.D.N.Y.1988). The "official information" privilege is not an absolute privilege, however, and application of the ten-factor *Hudgins* test, or consideration of comparable interests, is required to determine whether discovery should nonetheless be permitted. *See* 175 F.R.D. at 515. In *King*, the court

---

**7.** *See, e.g., Douglas v. Windham Superior Court*, 157 Vt. 34, 597 A.2d 774, 778–79 (1991) (identifying *Rizzo* as the "leading case setting forth the relevant factors"); *Manns v. Smith*, 181 F.R.D. 329, 330 (S.D.W.Va.1998) (referencing *Rizzo* with regard to the "detailed procedural frameworks" used to apply the "official information" privilege); Martin A. Schwartz, *Admissibility of Investigatory Reports in Section 1983 Civil Rights Actions—A User's Manual*, 79 Marq.L.Rev. 453, 506 (1996) (stating that "ten *Frankenhauser* factors have been 'widely followed' by the lower federal courts").

**8.** The common law privilege was separated into three categories by the federal court in *Hudgins*: "(1) a privilege protecting information gathered in the course of an enforcement investigation or proceeding, (2) a privilege against disclosing the identity of informers, and (3) a privilege for information which might compromise the effectiveness of novel investigative techniques." 175 F.R.D. at 514.

crafted a separate list of factors to balance in applying the "official information" privilege. Under this test, the following factors may weigh against disclosure: (1) threat to police officers' own safety; (2) invasion of police officers' privacy; (3) weakening of law enforcement programs; (4) chilling of police internal investigative candor; (5) chilling of citizen complainant candor; and (6) state privacy law. Those factors which may tip the scales in favor of disclosure are: (1) relevance to the plaintiff's case; (2) importance to the plaintiff's case; (3) strength of plaintiff's case; and (4) importance to the public interest. 121 F.R.D. at 191–96.

In discussing the balancing of the nonexclusive *Hudgins* factors, the court in *Kelly* determined that the privilege should be moderately pre-weighted in favor of disclosure. 114 F.R.D. at 661. In support of its leaning towards disclosure, the court opined that

> the public interests in the categories favoring disclosure (*e.g.* the policies underlying our civil rights laws, public confidence in the court system, and doing justice in individual cases) clearly outweigh the public interests in favor of secrecy (*e.g.*, not compromising procedures for self-discipline within police forces or the privacy rights of officers or citizen complainants).

*Id.; see also King*, 121 F.R.D. at 195 (stating that "[t]he great weight of the policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery" and that "these powerful public policies suggest that the defendants' case for restricted disclosure must be extremely persuasive"). Suggesting that "there has been substantial exaggeration of the size of the harm that limited disclosure might do to concededly legitimate law enforcement interests," the court observed in *Kelly* that "the weight of some of the interests in the law enforcement category may be reduced because courts routinely enter tightly crafted protective orders under which only a single litigant, sometimes only that litigant's lawyer, has access to the sensitive information." 114 F.R.D. at 661.

In *Henneman v. City of Toledo*, 35 Ohio St.3d 241, 520 N.E.2d 207 (1988), the Supreme Court of Ohio was asked to resolve issues analogous to those presented here. After carefully considering the competing issues of disclosure versus confidentiality of police records, the court concluded that the best approach was to require an *in camera* inspection of the documents. Accordingly, the court held that:

> Records and information compiled by an internal affairs division of a police department are subject to discovery in civil litigation arising out of alleged police misconduct if, upon an in camera inspection, the trial court determines that the requesting party's need for the material outweighs the public interest in the confidentiality of such information.

Syllabus, *Henneman*, 520 N.E.2d at 207. In the instant case, Defendants "concede that an *in camera* review in order to apply a balancing test would be appropriate." [9]

### B. Statutory Privilege

The court, in *Henneman*, was also presented with the argument that Ohio's public records statutory provisions, which exempt from disclosure "confidential law enforcement investigatory record[s]," supported the recognition of an absolute privilege with regard to such records. 520 N.E.2d at 210 (citing Ohio Rev.Code Ann. § 149.43(A)). Rejecting this argument, the court reasoned:

> In arguing that internal affairs investigatory files are shielded from disclosure in this case by the foregoing provisions [public records provision of Ohio's Privacy Act] appellants rely heavily on cases from this court holding that law enforcement investigation records are exempt from the public disclosure requirements of R.C. 149.43. These cases stand for the proposition that the law enforcement records described in R.C. 149.43(A)(2) are not subject to the requirement of R.C. 149.43(B) that all public records must be made available to the general public upon request at any reasonable time. **Appellee is not contending that the records she requests must be made available to her as a member of the general public.** R.C. 149.43(A)(2)

---

**9.** This concession was made both in their brief and during oral argument.

only operates to exempt the records described therein from the requirement of availability to the general public on request. It does not protect records from a proper discovery request in the course of litigation, if such records are otherwise discoverable.

520 N.E.2d at 210–11 (citations omitted and emphasis supplied).

Defendants, in their attempt to cloak the requested police materials in a shroud of confidentiality, have likewise suggested that provisions of this state's FOIA provide the necessary underpinnings for applying a privilege to law enforcement investigatory records. Specifically, Defendants look to West Virginia Code § 29B–1–4(4), which exempts from disclosure under FOIA, "[r]ecords of law enforcement agencies that deal with the detection and investigation of crime and internal records and notations of such law enforcement agency which are maintained for internal use in matters relating to law enforcement." Acknowledging that West Virginia has not applied this FOIA provision to the civil discovery process, Defendants maintain that other courts have at least looked to such provisions "as guidelines in balancing public policy concerns against the vital and important needs of litigants in the discovery process." *Hudgins,* 175 F.R.D. at 514. Critically, however, the court in *Hudgins* ruled that "[u]nder Illinois law, the FOIA exemptions are not dispositive of a discovery request" and explained further that "FOIA does not create an evidentiary privilege because the statute concerns disclosure to the public generally, not disclosure to a specific litigant in response to discovery in litigation." 175 F.R.D. at 514; *see also Martin v. Lamb,* 122 F.R.D. 143, 146 (W.D.N.Y.1988) (holding that statutory provision making police personnel records "confidential" did not create an evidentiary privilege: "Merely asserting that a state statute declares that the records in question are 'confidential' does not make a sufficient claim that the records are 'privileged' within the meaning of Fed.R.Civ.P. 26(b)(1) and Fed.R.Evid. 501."); Charles A. Wright and Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5437 n. 15 (1980) (explaining that statutes providing for confidentiality are "concerned with extrajudi-cial disclosures; privilege is concerned with disclosure in court").

Both state and federal courts have ruled that FOIA provisions do not govern civil discovery matters. *See Kerr v. United States District Court,* 511 F.2d 192, 197 (9th Cir.1975) (holding that "the exceptions to the disclosure in the Act [FOIA] were not intended to create evidentiary privileges for civil discovery"), *aff'd,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Pleasant Hill Bank v. United States,* 58 F.R.D. 97, 99 (W.D.Mo.1973) (rejecting as "unsound" "assumption that information exempt from disclosure to the general public under the Act [FOIA], by that fact alone, is 'privileged' within the meaning of F.R.Civ.P. 26(b)(1) and thus not discoverable by a civil litigant"); *Douglas v. Windham Superior Court,* 157 Vt. 34, 597 A.2d 774, 776 n. 2 (1991) (stating that "exception deals with disclosure to the public generally, not disclosure in response to discovery in litigation"). Logic suggests that FOIA provisions which address the confidentiality of records and their availability to the general public are aimed at protecting interests distinct from those at issue when records are requested in conjunction with a civil rights action. *See, e.g., King,* 121 F.R.D. at 191 (observing that "[m]ost information requested by civil rights plaintiffs in these lawsuits deals with professional personnel records such as prior involvement in disciplinary proceedings or citizen complaints filed against the officers" and stating that "[t]he privacy interest in this kind of professional record is not substantial because it is not the kind of 'highly personal' information warranting constitutional safeguard"); *see also Denver Policemen's Protective Ass'n v. Lichtenstein,* 660 F.2d 432, 435 (10th Cir. 1981) (determining that police personnel files and internal investigation files were not protected from disclosure based on privacy grounds where documents related simply to "the officers' work as police officers").

Emphasizing that the information they seek involves oversight and review of an officer's allegedly wrongful behavior and *not* information relative to the investigation or detection of a crime, Plaintiffs contend that the information requested falls outside the

investigatory records portion of the FOIA exception. *See* W.Va.Code § 29B–1–4(4); Syl. Pt. 11, *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985) (holding that investigatory records portion of FOIA does not include "information generated pursuant to routine administration or oversight, but is limited to information compiled as part of an inquiry into specific suspected violations of the law"). Plaintiffs further contend that the FOIA provision, which exempts from disclosure "internal records and notations ... which are maintained for internal use relating to law enforcement," does not apply to the information requested based on this Court's holding in *Hechler* that this language "refers to confidential investigative techniques and procedures." W.Va.Code § 29B–1–4(4); Syl. pt. 12, in part, 175 W.Va. at 437, 333 S.E.2d at 802.

 Given our conclusion that FOIA provisions are not controlling with regard to matters of confidentiality raised in the course of civil discovery, we need not delve into the intricacies of whether the document request falls within the parameters of the FOIA provisions. Like the Ohio Supreme Court in *Henneman,* we hold that the provisions of this state's FOIA, which address confidentiality as to the public generally, were not intended to shield law enforcement investigatory materials from a legitimate discovery request when such information is otherwise subject to discovery in the course of civil proceedings.[10] For the same reasons already discussed, we discount the applicability of several regulatory enactments relied upon by Defendants as supplemental support for this argument. *See* 81 W.Va.C.S.R. § 10–6.3 (stating that "[a]ll documents concerning complaints alleging employee [as against State troopers] misconduct shall be considered confidential"); 81 W.Va.C.S.R. § 10–3.3 (stating that "[t]he Superintendent shall ensure the confidentiality of all documents and

reports relating to the investigation of any complaint through strict control of files both within and outside the Unit's offices").

After thoroughly considering the arguments relative to the establishment of a privilege that would protect law enforcement investigatory materials from disclosure, we find no compelling need for the establishment of such a privilege. *See Douglas,* 597 A.2d at 777 (recognizing that "privileges are strongly disfavored" "[b]ecause of their interference with truthseeking"); *see also U.S. v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (stating that "these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth"); *Wood v. Breier,* 54 F.R.D. 7, 13 (E.D.Wis.1972) (denying motion for protective order concerning police investigation into alleged assault of civilian and stating that "danger of doing harm to the Milwaukee Police Department by allowing discovery of this file is not nearly so great as the harm that would surely result to the efficacy of our entire legal structure ... if a case such as this were won because the truth was hidden"). While we are cognizant of the laudatory objectives underlying a traditional law enforcement investigatory privilege, nothing in the matter before us suggests any correlation between the materials sought through discovery and the ability of the state police to effectively conduct either an investigation of the conduct alleged in the complaint or law enforcement efforts generally. *See Morrissey,* 171 F.R.D. at 90. Clearly, the information sought here is limited to either prior instances of police misconduct by Trooper Jones or to issues related to Plaintiffs' allegations of negligent hiring, training, and supervision.

 Plaintiffs suggest that there is a paramount public interest which requires disclo-

---

**10.** The certified question pertaining to a police personnel file raised the issue of privilege solely with regard to the provisions of FOIA. In deciding that FOIA does not create such a privilege, we make no further determination as to whether the entirety of the personnel file is subject to discovery. *See generally Jones v. Jennings,* 788 P.2d 732, 736–37 (Alaska 1990) (upholding trial court's decision to permit police officer's person-

nel records to be discoverable subject to *in camera* inspection and citing supporting and counter authority relative to discovery of police personnel files); *see also City of Los Angeles v. Superior Court,* 33 Cal.App.3d 778, 109 Cal.Rptr. 365 (Cal. Ct.App.1973) (determining that police personnel file was not subject to discovery after concluding that confidentiality interests of officer outweighed disclosure need of private litigants).

sure of the materials sought in actions involving allegations of police misconduct. *See, e.g.,* Martin A. Schwartz, *Admissibility of Investigatory Reports in Section 1983 Civil Rights Actions—A User's Manual,* 79 Marq. L.Rev. 453, 509 (1996) (observing that "the strong public interest in § 1983 actions generally weighs heavily in favor of a full airing of the relevant evidence"). Stressing the need to maintain public confidence in the judicial system as well as the need to champion civil rights litigation, Plaintiffs contend that these societal objectives outweigh the privacy interests of the citizens and police officers who provide information to police investigators. We wholeheartedly agree with Plaintiffs that the lawfulness of police operations is a matter of great concern to the state's citizenry. And we similarly concur with the sentiments expressed by the court in *Soto v. City of Concord,* 162 F.R.D. 603 (N.D.Cal.1995): "[T]he notion that police departments should be able to completely shield their internal affairs investigatory process from the public offends basic notions of openness and public confidence in our system of justice." *Id.* at 612. At the same time, however, we appreciate the concerns raised by Defendants that compelled disclosure of police investigatory materials might result in "fishing expeditions" and thereby encourage frivolous litigation. While these concerns of discovery abuse may be legitimate, we do not find them insurmountable. The panoply of projected horrors that Defendants forecast, absent the adoption of a law enforcement privilege, can be avoided through the use of *in camera* inspections and carefully crafted protective orders. Accordingly, we hold that records and information compiled by an internal affairs division of a police department are subject to discovery in civil litigation arising out of alleged police misconduct if,

upon an *in camera* inspection, the trial court determines that the requesting party's need for the material outweighs the public interest in maintaining the confidentiality of such information.[11]

When a lower court is presented with an objection to the production of internal police investigatory materials,[12] the court should utilize factors such as those identified in *Hudgins* and *King,* and all other relevant factors, in weighing whether there are convincing reasons to either deny disclosure entirely or to permit disclosure subject to the constraints of a protective order.[13] *See* 175 F.R.D. at 515; 121 F.R.D. at 191–96. Those courts that have adopted an "official information" privilege have imposed upon the party opposed to disclosure the burden to make a "substantial threshold showing" that specific harms are likely to result from the disclosure of the requested materials before the trial court is required to engage in the balancing test to determine whether the materials are privileged. *Kelly,* 114 F.R.D. at 669, *King,* 121 F.R.D. at 189. To meet this threshold requirement, the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to and the affidavit must include:

> (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality ...; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a

---

11. The trial court, in weighing this issue of confidentiality versus disclosure, should consider whether any perceived adverse effects to the public interest in maintaining confidentiality can either be eliminated or reduced through the use of an appropriately drawn protective order, which carefully constricts the manner in which such information is disseminated and the parties to whom it is provided. Where appropriate, the use of protective orders is preferential to the total non-disclosure of requested materials that are otherwise subject to discovery.

12. Because this case is presented by certified question and asks this Court solely to address the issue of whether law enforcement investigatory materials are privileged and thus not discoverable, we have limited our discussion to the issue of privilege. As with all discovery requests, they are subject to the most fundamental of all requirements—the requests must be "relevant to the subject matter involved." W.Va.R.Civ.P. 26(b)(1).

13. *See supra* note 11.

substantial risk of harm to significant governmental or privacy interests; and (5) a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Kelly,* 114 F.R.D. at 670.

While we do not go so far as to adopt a law enforcement privilege, we do adopt the requirement that the party seeking to avoid disclosure of law enforcement documents must make a "substantial threshold showing" of harm before the trial court is required to engage in the balancing test involving the *Hudgins* and *King*-type factors. *Kelly,* 114 F.R.D. at 669. In so doing, we impose upon the party challenging discovery the burden of initially demonstrating to the lower court's satisfaction why disclosure should not be permitted relative to the specific facts of the case under consideration. The party opposing disclosure may attempt to meet this burden through use of an affidavit, such as that approved in *Kelly,* or by producing other evidence relative to the disclosure issue. Like the court in *Kelly,* we agree that "a general claim of harm to the 'public interest' is insufficient to overcome the burden placed on the party seeking to shield material from

disclosure." *Kelly,* 114 F.R.D. at 672. The objections raised must be sufficiently specific to permit the trial judge to be fully apprised as to the significance of the disclosure concerns. Accordingly, we hold that before a circuit court is required to engage in an *in camera* inspection of records and information compiled by an internal affairs division of a police department to make a determination regarding the production of such documents through discovery, the party opposing disclosure must first make a substantial threshold showing that specific harms are likely to result from the disclosure of the requested materials.

Having answered the certified questions, this matter is referred back to the Circuit Court of Mercer County for further proceedings.

Certified questions answered.